MYRON WASHBURN and JAMES T. WASHBURN, Appellants, *v.* ROBERT R. BENEDICT, as Administrator, etc., of MARGARET BENEDICT, Deceased, Respondent, Impleaded with Others.

*Deed to a husband of land subsequently conveyed by the same grantors to the husband and wife with a recital that the latter had paid part of the purchase price — it creates a lien in favor of the wife — sale of the land by the husband — his power over a mortgage given to him as executor of his wife to secure the consideration thereof — election of remedies.*

A husband and wife in 1872 conveyed land to their son, Ira G. Washburn, by a deed which was recorded in 1882, and in 1877 they conveyed the same land to Ira G. Washburn and Maggie B. Washburn, his wife, by a deed which was recorded in 1889 and recited that $5,000 of the consideration had been paid by Maggie B. Washburn, and that it was agreed between the parties that she should "hold and own an interest to that amount" in the premises, and that Ira G. Washburn should hold and own the balance. Maggie B. Washburn died in 1878, leaving a will, of which her husband was appointed executor, by which she devised to him "the use of the interest I have in the farm on which we now reside until my children arrive at the age of twenty-one years," stating the amount paid by her thereon, and directed her executor to pay each of her two children, who, at the time the will was made, were aged respectively six and ten years, $2,500 when they should severally attain the age of twenty-one years. The will was admitted to probate as a will affecting real and personal estate, but was not recorded in the county clerk's office.

On April 1, 1882, Ira G. Washburn, having recorded the deed executed to him by his parents in 1872, conveyed a portion of the premises to Emma A. Reid, who executed a mortgage for the sum of $4,890 to him, "as executor of the last will and testament of Maggie B. Washburn, deceased, in trust for Myron and James T. Washburn, minor children of Maggie B. Washburn, of the second part."

December 1, 1884, Ira G. Washburn, individually and as executor of his wife's estate, assigned the mortgage, a portion of which had been paid and which would mature before the termination of his trusteeship, to one Betsey Gorham, whose administrator afterwards assigned it to Margaret Benedict. The deed executed in 1877 to Ira G. Washburn and his wife, Maggie B. Washburn, was not recorded until 1889.

In an action against the administrator of Margaret Benedict, brought by the children of Maggie B. Washburn, to set aside these assignments of the mortgage and to recover the amount paid on said mortgage to such administrator or to Margaret Benedict, it was

*Held,* that the deed executed in 1877 to Ira G. Washburn and Maggie B. Washburn did not divest the former of the title obtained by him under the deed executed in 1872, or affect his power to convey the land, but simply operated to give the wife a lien on the land while in the hands of the husband or in those of a subsequent grantee purchasing with notice of her claim;

That, by assailing the assignments of the mortgage, the plaintiffs elected to ratify the sale to Emma A. Reid and the mortgage given by her to the executor;

That, even assuming that Mrs. Gorham had knowledge of the deed to Ira G. Washburn and his wife and of the provisions of the latter's will, the mortgage would be valid in her hands or in those of her assignee, inasmuch as Ira G. Washburn had power to accept the mortgage, which he evidently did, in order to provide a fund for the payment of the lien;

That Ira G. Washburn, being intrusted with the management of personal estate, without any restriction upon his authority, had power to invest and reinvest the same, and to sell and transfer the security in which it was invested;

That the objection that the assignment of the mortgage by Ira G. Washburn, "as executor," did not pass the interest of the plaintiffs was unavailable, as a court of equity will not disturb the title of an assignee in good faith and for an adequate consideration because of a failure to use a proper designation.

APPEAL by the plaintiffs, Myron Washburn and another, from a judgment of the Supreme Court in favor of the defendant, Robert R. Benedict, as administrator, etc., of Margaret Benedict, deceased, entered in the office of the clerk of the county of Ontario on the 27th day of December, 1898, upon the decision of the court, rendered after a trial at the Ontario Special Term, dismissing their complaint.

Myron F. Washburn, in 1872, owned a farm in the town of Gorham in the county of Ontario, and in the month of April of that year he and his wife conveyed the same by warranty deed to their son, Ira G. Washburn, and this deed was recorded April 1, 1882. On April 1, 1877, the said Myron F. Washburn and wife executed and delivered to said Ira G. Washburn and his wife, Maggie B., a warranty deed of the same premises for the expressed consideration of $9,200. Of this consideration the deed states that $5,000 were paid by said Maggie B. Washburn and it contains this recital: "And it is hereby agreed by and between the parties to this instrument that she, the said Maggie B. Washburn, is to hold and own an interest to that amount in the above-described premises, and the said Ira G. Washburn to hold and own the balance of the same with the appurtenances, and all the estate, title and interest therein of the said party of the first part."

This deed was not recorded until February 18, 1889, or seven years after the recording of the first deed above mentioned. On the 12th of August, 1878, the said Margaret B. Washburn executed her last will and testament whereby she bequeathed and devised to her husband, Ira G. Washburn, "the use of the interest I have in the farm

on which we now reside until my children arrive at the age of twenty-one years. The amount which I paid on the farm is five thousand dollars." She then directed her executor, to wit, her husband, to pay to each of the two children above referred to $2,500 when they severally attain the age of twenty-one years. At the time of the making of this will the sons were aged respectively six and ten years. Mrs. Washburn died on October 2, 1878, shortly after the execution of this will and it was duly admitted to probate as a will of real and personal estate in the Surrogate's Court of the county of Ontario, and was recorded therein as such, and letters testamentary were issued to the executor, Ira G. Washburn. Neither the will nor an exemplified record of the same was recorded in the office of the clerk of the county.

On April 1, 1882, said Ira G. Washburn by warranty deed conveyed a part of said premises to Emma A. Reid for a consideration of $4,890, and the grantee executed back a purchase-money mortgage for that sum to said Ira G. Washburn, "as executor of the last will and testament of Maggie B. Washburn, deceased, in trust for Myron and James T. Washburn, minor children of Maggie B. Washburn, of the second part." By the terms of said mortgage $1,500 were to be due in one year from its date and $250 annually thereafter, and the mortgagor possessed the privilege of paying as she might elect in excess of the absolute payments whenever the stipulated sums were due. The right of sale in case of default was given to the party of the second part, " his executors, administrators, or assigns."

On the 1st day of December, 1884, Washburn as executor and personally assigned this mortgage by written assignment to Betsey Gorham. She paid the full amount of principal ($2,890) unpaid, together with all the interest to the date of the transfer. She died soon after, and on the 27th of March, 1889, her administrator assigned the mortgage to Margaret Benedict, and the defendant Benedict is her administrator. Both of these assignments are recorded.

This action is brought by the legatees of Maggie B. Washburn to set aside these assignments and for judgment against the defendant executor for the amount paid on said mortgage to him or to said Margaret Benedict.

*Edwin Hicks,* for the appellants.

*John Gillette,* for the respondent.

Spring, J.:

By the deed from his father, in 1872, the title to the farm in question became vested in Ira G. Washburn. The subsequent deed did not destroy his title. He and his wife are both grantees in that conveyance, and her interests are specifically defined therein to be $5,000, which was her contribution toward the purchase price. That is, the title was still in Ira G. Washburn if we give full effect to this conveyance, but subject to the lien thereon of $5,000 in recognition of her payment of that sum on the consideration. The fee of the land was not vested in her, but, as the second deed was accepted by Ira subject to the provision in favor of his wife, she did have a lien, valid and enforcible, against the land while the title continued in her husband, and also as against subsequent grantees purchasing with notice of her claim.

By her will, made in 1878, she gave to her husband the use of her interest in the farm until her children attained the age of twenty-one years. As her only interest was this lien, she undoubtedly referred to that, so that the payment of this lien could be held in abeyance until the contingency was reached. This did not, however, restrain him from paying the sum at an earlier date if he elected to do so.

She then in terms directed her executor to pay to each of these two sons $2,500 as they severally arrived at the age of twenty-one years. It is not entirely clear what the intention of the testatrix was. The amount of her estate does not appear. If the lien was inadequate to pay these two boys, and she possessed other property, probably any deficiency would be payable out of her general estate. It is probable, however, that it was her intention that these two legacies were to be paid from this lien, but this is only an inferential deduction. If that is the true interpretation, the testatrix must have had in mind that the lien, in the long time that would elapse before the bequests were to be paid to her children, would become extinguished or reduced, and she, therefore, charged her executor with the payment rather than make the bequests specific incumbrances upon her interest in this land. She could not well do otherwise, as the land

belonged to him and she could not restrain his right to sell the same, and as the lien was due at any time, its payment could not be prevented.

The title to the farm, however, was in the husband without any suspension of his power to alien the same. Fifteen years would elapse before the younger son reached his majority after the execution of the will, and these bequests must be considered in view of the circumstances surrounding the property. That if he conveyed the same the grantee might desire to pay this lien instead of continuing it as an incumbrance for the long period which would expire before it was due as against Ira G. Washburn was not improbable. He had possession of this farm and was entitled to its fruits unimpaired by the incumbrance until his boys became of age. In the event of the sale of the land, if this lien should be paid, the obligation still rested upon him, as executor, to invest the money, receiving the income and continuing the *corpus* intact in some form to make effectual the duty he accepted when he became executor of the will.

He conveyed the land to Emma Reid in 1882. He did not violate his obligation to his dead wife by this transfer, for he sold his own property. At that time he recorded the deed from his parents to him; but the deed establishing the lien, and which named himself and wife as grantees, was not recorded. There is no suggestion that Mrs. Reid had actual notice of the existence of this lien, and an inspection of the record would have shown simply a conveyance vesting an unqualified title in the grantor, Ira G. Washburn. While the will was admitted to probate as one pertaining to real estate, there is nothing to indicate it had been recorded in the office of the clerk of the county. There was nothing, therefore, to challenge Washburn's right to convey. Mrs. Reid was an innocent purchaser, paying adequately for the land acquired, and with nothing to arouse her suspicion.

But if she had purchased with full notice of the existence of this lien, the appellants would be remediless in this suit. She could pay this lien at any time, and she did this by giving the mortgage to Washburn. He accepted this evidently in fulfillment of his duty to keep a sum undisturbed to make good these legacies. It was payable to him as executor and for the benefit of these children. This

security was at least of as high a grade and more satisfactory in form than the original lien; so that the change in the character of the incumbrance was not an improvident exercise of the discretion vested in him. Like any other guardian or trustee, he could transfer his security, if, in his judgment, the interests of his wards would be benefited thereby. If the land depreciated in value, or if for any reason he deemed the assignment of the mortgage judicious, he could transfer the same. His own interests therein as well as the kindred interest of the children justified this. Again, the mortgage by its conditions matured before the younger of the sons was entitled to payment, and in the natural course of events he would be receiving the principal from time to time, thus charging him with the duty of keeping it invested as payments were made. In fact, when he assigned this mortgage to Mrs. Gorham it had been reduced nearly $2,000 by payments made by the mortgagor.

Assuming, therefore, that Mrs. Reid bought the land with full notice of the deed to Ira and his wife, and that she was cognizant of the provisions of the wife's will, her title could not be disturbed, and the mortgage she gave would be in confirmation of the will and of the rights of the beneficiaries thereunder. If Mrs. Gorham had possessed the same knowledge, the transfer of the mortgage to her would still be effectual, as Washburn did not transcend his power in disposing of the same. The principle has been settled since its early enunciation by Chancellor KENT in *Field* v. *Schieffelin* (7 Johns. Ch. 150), that where a guardian or trustee is vested with the management and control of the property committed to him, he can receive pay thereon and sell and assign the same in the exercise of that discretion which is inseparably connected with the execution of the trust. (*Dillaye* v. *Commercial Bank of Whitehall*, 51 N. Y. 345; *Spencer* v. *Weber*, 26 App. Div. 285.) The cases apparently tending in a different direction are easily distinguishable. In *Deobold* v. *Oppermann* (111 N. Y. 531) the defendants, as sureties on the bond of an administratrix, required her to deposit with them all the proceeds of the estate, and by her consent they were to be used in the business of running a brewery carried on by the defendants, and the fund was held impressed with the trust obligation. And the rule is general that when a trustee invests his funds in

speculation or securities of fluctuating value, the investment can be followed in the hands of any recipient who had adequate notice of the misappropriation from the trustee. The rule involves no invasion of the principle that a guardian or trustee who is intrusted with the management of personal estate without any restriction upon his authority, can invest and reinvest, sell and transfer, these securities, and the purchaser in good faith will be protected, regardless of the dissipation of the funds by the trustee. (The Real Property Law, 3 Birdseye's R. S. [2d ed.] 2616, Laws of 1896, chap. 547, § 88 ; *Kirsch* v. *Tozier*, 143 N. Y. 390, 395.)

It is contended that the fact that the mortgage was made to Washburn as executor and in trust for the appellants was sufficient to put Mrs. Gorham upon inquiry. If she had examined the record of the will in the surrogate's office she would have ascertained that Mrs. Washburn had directed the executor to pay to each of these sons $2,500 as they respectively attained their majorities. She would have found no restriction upon his right to invest this lien which was due when her will was made.

By assailing this assignment the plaintiffs have ratified the sale to Emma Reid and her mortgage to the executor. If the abrogation of the original lien was to be attacked, it must be by suit in some form to reimpress their lien upon the land. Instead of that, they affirm the sale and the giving of the mortgage and rest their case upon the alleged invalidity of the assignment. We have, therefore, a transaction which brings the mortgage into life and into the custody of the executor as a security unchallenged and satisfactory to the plaintiffs. The character of the original lien, the right of the executor to satisfy the same by the receipt of this mortgage and the honesty and good faith of Mrs. Reid in the purchase of the land, and in the giving of the mortgage and Washburn's good faith in its acceptance and the conditions of the mortgage itself, are all confirmed by this suit which is aimed to set aside the assignment of the mortgage and vest that instrument in these plaintiffs as the beneficiaries of their mother. They cannot both attack and vindicate these various transactions. (*Moller* v. *Tuska*, 87 N. Y. 166; *Terry* v. *Munger*, 121 id. 161.)

The rule is thus stated in the Encyclopædia of Pleading and Practice (Vol. 7, p. 363): "As soon as the choice is made and one of the

alternative remedies proffered by the law adopted, his act at once operates as a bar as regards the other and the bar is final and absolute."

The slender thread upon which this case is suspended, therefore, is the validity of the transfer by Washburn to Mrs. Gorham, and I know of no authority which prevents him from assigning a mortgage which has already been greatly reduced by payments and which would fully mature before the termination of his trusteeship.

Again, it is contended that the assignment of the mortgage was simply by him as executor and did not pass the interest of the beneficiaries therein. The will in terms did not denominate Washburn a trustee, but simply as executor, and he followed that term in the assignment. He received the full sum unpaid on the mortgage and it was the intention to assign the whole interest possessed by him in any capacity, and even if he failed to use a proper designation, a court of equity will not disturb the title of an assignee in good faith and for an adequate consideration.

The judgment is affirmed, with costs of the action.

All concurred, except SMITH, J., who concurred in the result.

Judgment affirmed, with costs.