## WASHBURN et al. v. BENEDICT.

(Supreme Court, Appellate Division, Fourth Department. December 6, 1899.)

1. DEEDS—EFFECT.

Certain property was conveyed by a father to a son, and later, the son's wife having contributed to the purchase price, another deed was executed by the father to the son and his wife, reciting that the wife should hold an interest to the amount she contributed, and her husband should hold the balance of the property, with the appurtenances, and all the estate, title, and interest therein of the grantors. *Held*, that by the first deed the title of the property vested in the son, and that such title was not affected by the subsequent deed, which, on acceptance by the son, operated merely to create a lien in favor of his wife to the extent of her contribution to the consideration.

2. POWERS OF TRUSTEE.

Property was conveyed to a husband, and later the grantors executed another deed to the husband and wife, by which the wife acquired a lien on the land to the extent of $5,000, contributed by her towards the purchase price. She subsequently died, leaving a will, in which she named the husband as her executor, and directed that he should pay $2,500 to each of her two sons on their attaining majority. The husband recorded the first deed to himself after his wife's death, and sold a part of the property, taking a mortgage thereon, payable to himself, as executor, in trust for the sons, which mortgage, after receiving payments thereon, he assigned for its full value. *Held*, that the husband had power to sell the land and discharge the lien by payment at any time, and hence the taking of the mortgage and its assignment were a proper exercise of his powers as trustee of the fund from which the ultimate payments to the sons were to be derived.

3. EXECUTORS—ACTION BY HEIRS—ESTOPPEL.

Where an executor took a mortgage to secure a trust fund for the benefit of testator's heirs, which he subsequently assigned, and the heirs brought an action against such executor and the administrator of an assignee to vacate the assignment and recover payments made to the executor and assignee, they thereby admitted the executor's right to make the mortgage,. and could not contest his right to assign the same, which power he possessed as incident to his management of the estate.

4. SAME—ASSIGNMENT OF MORTGAGE—EFFECT.

Where an executor took a mortgage to himself as executor, in trust·for certain of testator's heirs, and thereafter assigned the same in good faith for the entire amount due thereon, intending to convey the whole title possessed by him in any capacity, equity will not disturb the assignee's title on the ground that he made the assignment as executor only, and not as trustee.

Appeal from equity term, Ontario county.

Action by Myron Washburn and another against Robert R. Benedict, as administrator, etc., to set aside assignments of a mortgage, and recover payments made thereon. From a judgment dismissing the complaint on its merits, plaintiffs appeal. Affirmed.

Myron F. Washburn, in 1872, owned a farm in the town of Gorham, in the county of Ontario, and in the month of April of that year he and his wife conveyed the same by warranty deed to their son, Ira G. Washburn, and this deed was recorded April 1, 1882. On April 1, 1877, the said Myron F. Washburn and wife executed and delivered to said Ira G. Washburn and his wife, Maggie B., a warranty deed of the same premises for the expressed consideration of $9,200. Of this consideration the deed states that $5,000 were paid by said Maggie B. Washburn, and contains this recital: "And it is hereby agreed by and between the parties to this instrument that she, the said Maggie B. Washburn, is to hold and own an interest to that amount in the above-described premises, and the said Ira G. Washburn to hold and own the balance of the same, with the appurtenances, and all the estate, title, and interest therein of the said party of the first part." This deed was not recorded until February 18, 1887,—or five years after the recording of the first deed above mentioned. On the 12th of August, 1878, the said Margaret B. Washburn executed her last will and testament, whereby she bequeathed and devised to her husband, Ira G. Washburn, "the use of the interest I have in the farm in which we now reside until my children arrive at the age of twenty-one years. The amount which I paid on the farm is five thousand dollars." She then directed her executor, to wit, her husband, to pay to each of the two children above referred to $2,500 when they severally attain the age of 21 years. At the time of the making of this will the sons were aged, respectively, 6 and 10 years. Mrs. Washburn died shortly after the execution of this will, and it was duly admitted to probate as a will of real and personal estate in the surrogate's court of the county of Ontario, and was recorded therein as such, and letters testamentary were issued to the executor, Ira G. Washburn. Neither the will nor an exemplified record of the same was recorded in the office of the clerk of the county. On April 1, 1882, said Ira G. Washburn, by warranty·deed, conveyed a part of said premises to Emma A. Reid with a consideration of $4,890, and the grantee executed back a purchase-money mortgage for that sum to said Ira G. Washburn, "as executor of the last will and testament of Maggie B. Washburn, deceased, in trust for Myron and James T. Washburn, minor children of Maggie B. Washburn, of the second part." By the terms of said mortgage $1,500 were to be due in one year from its date, and $250 annually thereafter; and the mortgagor possessed the privilege of paying, as she might elect, in excess of the absolute payments, whenever the stipulated sums were due. The right of sale in case of default was given to the party of the second part, "his executor, administrator, or assigns." On the 1st day of December, 1884, Washburn, as executor and personally, assigned this mortgage by written assignment to Betsey Gorham. She paid the full amount of principal ($2,890) unpaid, together with all the interest to the date of the transfer. She died soon

after, and on the 27th of March, 1889, her administrator assigned the mortgage to Margaret G. Benedict, and the defendant, Benedict, is her administrator. Both of these assignments are recorded. This action is brought by the legatees of Maggie B. Washburn to set aside these assignments, and for judgment against the defendant executor for the amount paid on said mortgage to him or to said Margaret G. Benedict.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and SMITH, JJ.

Edwin Hicks, for appellants.
John Gillette, for respondent.

SPRING, J. By the deed from his father in 1872, the title to the farm in question became vested in Ira G. Washburn. The subsequent deed did not destroy his title. He and his wife are both grantees in that conveyance, and her interests are specifically defined therein to be $5,000, which was her contribution towards the purchase price; that is, the title was still in Ira G. Washburn, if we give full effect to this conveyance, but subject to the lien thereon of $5,000 in recognition of her payment of that sum on the consideration. The fee of the land was not vested in her, but, as the second deed was accepted by Ira subject to the provision in favor of his wife, she did have a lien, valid and enforceable against the land while the title continued in her husband, and also as against subsequent grantees purchasing with notice of her claim. By her will, made in 1878, she gave to her husband the use of her interest in the farm until her children attained the age of 21 years. As her only interest was this lien, she undoubtedly referred to that, so that the payment of this lien could be held in abeyance until the contingency was reached. This did not, however, restrain him from paying the sum at an earlier date if he elected to do so. She then in terms directed her executor to pay to each of these two sons $2,500 as they severally arrived at the age of 21 years. It is not entirely clear what the intention of the testatrix was. The amount of her estate does not appear. If the lien was inadequate to pay these two boys, and she possessed other property, probably any deficiency would be payable out of her general estate. It is probable, however, it was her intention that these two legacies were to be paid from this lien; but this is only an inferential deduction. If that is the true interpretation, the testatrix must have had in mind that the lien, in the long time that would elapse before the bequests were to be paid to her children, would become extinguished or reduced, and she, therefore, charged her executor with the payment, rather than make the bequests specific incumbrances upon her interest in this land. She could not well do otherwise, as the land belonged to him, and she could not restrain his right to sell the same; and, as the lien was due at any time, its payment could not be prevented. The title to the farm, however, was in the husband without any suspension of his power to alien the same. Fifteen years would elapse before the younger son reached his majority after the execution of the will, and these bequests must be considered in view of the circumstances surrounding the property. That, if he conveyed the same, the gran-

tee might desire to pay this lien instead of continuing it as an incumbrance for the long period which would expire before it was due as against Ira Washburn. He had possession of this farm, and was entitled to its fruits unimpaired by the incumbrance until his boys became of age. In the event of the sale of the land, if this lien should be paid, the obligation still rested upon him as executor to invest the money, receiving the income and continuing the corpus intact in some form to make effectual the duty he accepted when he became executor of the will. He conveyed the land to Emma Reid in 1882. He did not violate his obligation to his dead wife by this transfer, for he sold his own property. At that time he recorded the deed from his parents to him, but the deed establishing the lien, and which named himself and wife as grantees, was not recorded. There is no suggestion that Mrs. Reid had actual notice of the existence of this lien, and an inspection of the record would have shown simply a conveyance vesting an unqualified title in the grantor, Ira Washburn. While the will was admitted to probate as one pertaining to real estate, there is nothing to indicate it had been recorded in the office of the clerk of the county. There was nothing, therefore, to challenge Washburn's right to convey. Mrs. Reid was an innocent purchaser, paying adequately for the land acquired, and with nothing to arouse her suspicion. But, if she had purchased with full notice of the existence of this lien, the appellants would be remediless in this suit. She could pay this lien at any time, and she did this by giving the mortgage to Washburn. He accepted this evidently in fulfillment of his duty to keep a sum undisturbed to make good these legacies. It was payable to him as executor, and for the benefit of these children. This security was, at least, of as high a grade, and more satisfactory in form, than the original lien, so that the change in the character of the incumbrance was not an improvident exercise of the discretion vested in him. Like any other guardian or trustee, he could transfer his security, if, in his judgment, the interests of his wards would be benefited thereby. If the land depreciated in value, or if, for any reason, he deemed the assignment of the mortgage judicious, he could transfer the same. His own interest therein, as well as the kindred interest of the children, justified this. Again, the mortgage, by its conditions, matured before the younger of the sons was entitled to payment, and in the natural course of events he would be receiving the principal from time to time, thus charging him with the duty of keeping it invested as payments were made. In fact, when he assigned this mortgage to Mrs. Gorham it had been reduced nearly $2,000 by payments made by the mortgagor. Assuming, therefore, that Mrs. Reid bought the land with full notice of the deed to Ira and his wife, and that she was cognizant of the provisions of the wife's will, her title could not be disturbed; and the mortgage she gave would be in confirmation of the will and of the rights of the beneficiaries thereunder. If Mrs. Gorham had possessed the same knowledge, the transfer of the mortgage to her would still be effectual, as Washburn did not transcend his power in disposing of the same. The principle has been settled since its early enunciation by Chan-

cellor Kent in Field v. Schieffelin, 7 Johns. Ch. 150, that, where a guardian or trustee is vested with the management and control of the property committed to him, he can receive pay thereon, and sell and assign the same in the exercise of that discretion which is inseparably connected with the execution of the trust. Dillaye v. Bank, 51 N. Y. 545; Spencer v. Weber, 26 App. Div. 285, 49 N. Y. Supp. 687. The cases apparently tending in a different direction are easily distinguishable. In Deobold v. Opperman, 111 N. Y. 531, 19 N. E. 94, the defendants, as sureties on the bond of an administratrix, required her to deposit with them all the proceeds of the estate, and by her consent they were to be used in the business of running a brewery carried on by the defendants, and the fund was held impressed with the trust obligation. And the rule is general that, when a trustee invests his funds in speculation, or securities of fluctuating value, the investment can be followed in the hands of any recipient who had adequate notice of the misappropriation from the trustee. The rule involves no invasion of the principle that a guardian or trustee who is intrusted with the management of personal estate, without any restriction upon his authority, can invest and reinvest, sell and transfer, these securities, and the purchaser in good faith will be protected regardless of the dissipation of the funds by the trustee. 3 Birdseye's Rev. St. p. 2616, § 88; Kirsch v. Tozier, 143 N. Y. 390–395, 38 N. E. 375. It is contended that the fact that the mortgage was made to Washburn as executor and in trust for the appellants was sufficient to put Mrs. Gorham upon inquiry. If she had examined the record of the will in the surrogate's office, she would have ascertained that Mrs. Washburn had directed the executor to pay to each of these sons $2,500 as they respectively attained their majorities. She would have found no restriction upon his right to invest this lien, which was due when her will was made. By assailing this assignment the plaintiffs have ratified the sale to Emma Reid and her mortgage to the executor. If the abrogation of the original lien was to be attacked, it must be by suit in some form to reimpress their lien upon the land. Instead of that, they affirm the sale and the giving of the mortgage, and rest their case upon the alleged invalidity of the assignment. We have, therefore, a transaction which brings the mortgage into life, and into the custody of the executor, as a security unchallenged and satisfactory to the plaintiffs. The character of the original lien, the right of the executor to satisfy the same by the receipt of this mortgage, and the honesty and good faith of Mrs. Reid in the purchase of the land and in the giving of the mortgage, and Washburn's good faith in its acceptance, and the conditions of the mortgage itself, are all confirmed by this suit, which is aimed to set aside the assignment of the mortgage, and vest that instrument in these plaintiffs as the beneficiaries of their mother. They cannot both attack and vindicate these various transactions. Moller v. Tuska, 87 N. Y. 166; Terry v. Munger, 121 N. Y. 161, 24 N. E. 272. The rule is thus stated in the Encyclopedia of Pleading and Practice (volume 7, p. 363): "As soon as the choice is made, and one of the alternative remedies proffered by the law adopted, his act at once operates as a bar as re-

gards the other, and the bar is final and absolute." The slender thread upon which this case is suspended, therefore, is the validity of the transfer by Washburn to Mrs. Gorham, and I know of no authority which prevents him from assigning a mortgage which has already been greatly reduced by payments, and which would fully mature before the termination of his trusteeship.

Again, it is contended that the assignment of the mortgage was simply by him as executor, and did not pass the interest of the beneficiaries therein. The will, in terms, did not denominate Washburn a trustee, but simply as executor, and he followed that term in the assignment. He received the full sum unpaid on the mortgage, and it was the intention to assign the whole interest possessed by him in any capacity, and, even if he failed to use a proper designation, a court of equity will not disturb the title of an assignee in good faith, and for an adequate consideration. The judgment is affirmed, with costs of the action. All concur; SMITH, J., in result.