194 So. 200
## BIRMINGHAM TRUST & SAVINGS CO. v. STRONG et al.
### 6 Div. 497.

Supreme Court of Alabama.
Nov. 23, 1939.

Rehearing Denied March 7, 1940.

Wm. B. White, Douglas Arant, B. A. Monaghan and Bradley, Bladwin, All & White, all of Birmingham, for appellant.

Wm. S. Pritchard, David R. Solomon, and Winston B. McCall, all of Birmingham, for appellees.

THOMAS, Justice.

The submission was on motion to dismiss the appeal and on the merits.

In consideration of the motion to dismiss the appeal as not being final (Huie et al. v. Smith, Ala.Sup., 189 So. 729),[1] it is observed, that a decree may be a final decree in part and merely interlocutory in part. It is necessary that a decree be final to support an appeal. Michie's Code, § 6078; De Graffenried v. Breitling, 192 Ala. 254, 68 So. 265. In this sense there may be several final decrees. Fleming v. Copeland, 210 Ala. 389, 98 So. 128; First Nat'l. Bank of Opp v. Cotton, 231 Ala. 288, 164 So. 371. This decree was final in the sense that it settled the equities presented and supports the appeal.

The motion to dismiss is overruled.

The statement of facts is as follows:

Appellant, Birmingham Trust & Savings Company, a banking institution which has existed under the laws of Alabama since 1887, is engaged in the banking business in Birmingham, and maintains, separate from its commercial banking department, a Trust Department, which is and for many years has been engaged in the business of ad-

[1] 238 Ala. 81.

ministering trusts. The Strong trust was administered by said Trust Department. Throughout the period here involved, appellant was a member of the Federal Reserve System and as such was subjected periodically to examination by the Federal authorities; and, of course, it was likewise under supervision of the Superintendent of Banks of the State of Alabama.

James E. Strong, a resident of Birmingham, Alabama, died on January 9, 1929. At the time of his death he was a stockholder in the appellant bank. He appointed the appellant, Birmingham Trust & Savings Company, executor of his will. The will created a trust to continue until February 14, 1935, when his youngest son, Ernest Strong, became twenty-one years of age. The appellant was designated trustee. The will provided that the income be used for the maintenance and support of the testator's widow, Lillian Strong, and for the maintenance, support and education of his said son, Ernest Strong. In a separate decree September 30, 1930, prior to the commencement of this trusteeship, the Circuit Court entered a decree construing the will to entitle Lillian Strong to all the income from the trust. The trustee was directed "to distribute, as soon as practicable after February 14, 1935, all of the trust estate then being administered by it" equally among five persons: the widow, Lillian Strong, a daughter, Irene Strong Gulledge, and the testator's three sons, Edgar Strong, James Morgan Strong, and Ernest Strong. The share of Ernest Strong was to be distributed to his mother, Lillian Strong, as trustee for him until he became twenty-five years of age. Item 4(b) of the will provides, among other things, as follows:

"To keep the said property together and manage the same as fully and to the same extent as I could if living, to which end the said trustee is hereby authorized and empowered to sell, upon such terms and conditions as to it may seem best, any of the said property, real or personal, and to invest the proceeds of such sale in such other property as it may select, the property so purchased by it to constitute a part of said trust estate, or to lend the proceeds of such sale, taking as security therefor first mortgages on real estate at such rate of interest as it may see fit to fix. And the said trustee is further authorized and empowered to repair and in anywise to better or improve any of the said property, real or personal."

Item 4(g) of the will is as follows:

"The said Trustee shall be entitled to a reasonable compensation for its services, in this behalf, and shall be under no responsibility except for wilful wrong or wilful breach of trust."

The trusteeship under the will commenced December 9, 1930. The executor was discharged and the trust created by the will terminated February 14, 1935.

The trust department of the appellant is a unit separate and distinct from the commercial department. With the exception of three senior supervisory officers, the Chairman, the President, and the Senior Vice President, through their membership on the Executive Committee, the staff of the commercial department performs no functions in the administration of the trust department. The mortgage loan department, the investment department and the real estate department are sections or divisions of the trust department.

Continuously since 1919 the chief executive officer of the trust department has been Maclin F. Smith, Vice President and Trust Officer. Prior to the beginning of his service as Trust Officer, he was a practicing lawyer in Birmingham. By virtue of his experience as head of the trust department, he is familiar with the conduct of the business of the administration of trusts in Birmingham and in Alabama generally, and with the general custom and usage which prevails in the State of Alabama in the administration of trusts by fiduciary institutions. He has had intimate, direct, and detailed experience in the supervision and management of numerous trust estates. In the performance of his duties he has exercised general supervision over the management of a large quantity of real estate of every type, including the supervision of sales, the making of mortgage loans on property, and actual appraising. He estimated that in the course of his experience as head of the Trust Department he has dealt with approximately 1,500 to 2,000 separate parcels of real property. Throughout the period of his service as chief of the Trust Department he has kept in close touch with the real estate market in Birmingham and has been generally familiar with the conditions in the real estate market in Birmingham. Along with the Chairman of the Board of Directors and George A. Brewer, Assistant Trust Officer, he is a

member of the Trust Investment Committee of the Trust Department.

George A. Brewer, who became connected with the appellant in 1925 as Manager of the Real Estate Department and remained in that position several years, is and for many years has been Assistant Trust Officer and as such is in charge of the Mortgage Loan Department and the Investment Department of the Trust Department. He is also a member of the Trust Investment Committee. He exercised functions with reference to stocks and bonds, securities generally, statistics and charts, and was charged primarily with the duty of making real estate appraisals for mortgage loans. For many years prior to the transactions involved in this case he has had wide experience in making appraisals of real property both on his own responsibility and jointly with other appraisers.

The other trust officers are shown to be experienced and competent to perform the duties with which they are charged.

The Trust Investment Committee, during the period here involved, consisted of A. W. Smith, Chairman of the appellant's Board of Directors, Maclin F. Smith, Vice President and Trust Officer, and George A. Brewer, Assistant Trust Officer. The Trust Investment Committee had supervision over the investment of principal funds of trust accounts and at intervals of not more than six months apart reviewed, considered, and made decisions with respect to the securities in each trust account, and exercised general supervision over the investment and reinvestment of principal funds. Every investment that was made was considered and approved beforehand by a majority of the seven members of the Executive Committee of the Board of Directors.

During the entire period here involved, the appellant's Executive Committee was composed of seven members of the Board of Directors. This committee considered and approved beforehand every investment that was made in the Strong trust and other trusts. Its members were: A. W. Smith, Walter E. Henley, William H. Manly, Lee C. Bradley, Sr., T. H. Benners, Samuel L. Earle, and J. A. Vann. Such were the respective officials who acted in the administration of this estate and in the making of the investments in question.

At the commencement of the trusteeship under the testamentary trust on December 9, 1930, the trust property as established by the original capital account which was set up on the basis of the assessment by the United States Government for federal estate taxes was $277,335.08. The capital account or the corpus as so established consisted of cash, stocks and bonds which had been held by the testator, first mortgage loans, and real estate which the testator had owned during his lifetime.

The trustee has distributed to the appellees as beneficiaries of the testamentary trust the stocks and bonds received by the trustee, the cash on hand, the real property owned by the testator during his lifetime and a few parcels acquired by the trustee through foreclosure of mortgages made and held by the testator, cash received through the payment at face value of most of the loans secured by mortgages in which the appellees had participating interests, and cash realized from the sale of property acquired by the trustee through foreclosure of mortgages secured by loans in which the beneficiaries had participating interests. The beneficiaries have received the face amount, with interest, of all mortgages in which the trust held participatory interests, except the four here involved. There is no evidence that the appellees have suffered or will ultimately suffer any loss on account of the investments complained of. On the contrary, the fair inference from the evidence is that no substantial loss will result from any of these investments. As we understand the record, no bad faith or wilful misconduct is shown in the acts of the trustee as administrator of the estate held in trust.

As we have heretofore indicated, Item 4(g) of the will provides that the "trustee shall be entitled to a reasonable compensation for its services in this behalf, * * *." For its services throughout the life of the testamentary trust, the trustee received compensation in the aggregate sum of $4,920.26, based on the general valuations and that accepted by the Federal government of the properties in question.

The trust created by the will terminated February 14, 1935. On February 15, 1935, the appellees as beneficiaries of the trust under the will entered into an agreement providing that, whereas, the testamentary trust had terminated February 14, 1935, and title to all the property held by the trustee thereunder was then vested in the beneficiaries in equal shares, it was agreed that the trust property be divided among

and distributed to the appellees in the manner set forth in the agreement. Certain cash, stocks, and bonds were allocated by the agreement among the five beneficiaries, the appellees.

There remained, in the trust estate, certain real property which had been owned by the testator and had been a part of the trust property, together, with other real property which the trustee had acquired through the foreclosure of mortgages held by the testator during his lifetime, certain participations in loans secured by first mortgages, and interests in real estate which had been acquired by the trustee through the foreclosure of first mortgages securing loans in which the trust owned participations.

The agreement provided further that all these interests remaining in the trust estate be conveyed to the appellant as trustee to be administered under the provisions of an indenture of trust executed contemporaneously therewith between all the beneficiaries and the appellant on February 15, 1935. Under this indenture of trust, the beneficiaries conveyed and assigned to the appellant as trustee thereunder four whole mortgages, nine participations in loans secured by mortgages, two notes receivable, and twelve parcels of real estate. Most of the real estate had been owned by the testator during his lifetime; two or three parcels had been acquired by the trustee through foreclosure of mortgages held by the testator at the time of his death.

As a part of the same transaction on February 15, 1935, the beneficiaries conveyed to the appellant as trustee under the new trust thus created their title to the undivided interests in real property acquired by the trustee through foreclosures of mortgages securing loans in which the testamentary trust had participated. The indenture under which the trust was created on February 15, 1935, provided in detail for the management by the trustee thereunder of the property embraced therein and contained the following provision:

"6. The trust hereby created shall terminate ten years from the date hereof, namely, February 13, 1945, or upon the complete liquidation and distribution of all the trust property, whichever event first occurs. The trust hereby created may be revoked however, at any time by an instrument in writing signed by a majority in interest of the Distributees and delivered to the Trustee, a copy of which shall be filed in the Probate Office of Jefferson County, Alabama. The Trustee reserves the right to terminate this agreement at any time by serving on the Distributees written notice thereof, which notice may be served by mailing a copy thereof to the last known address of each of the Distributees."

The appellant served as trustee under the trust so created on February 15, 1935, until December 4, 1935, at which time the appellees through their counsel terminated the trust by delivering to the appellant , as trustee thereunder and by filing for record in the office of the Probate Judge of Jefferson County, Alabama, an instrument dated September 10, 1935, reciting the creation of the February 15, 1935, trust and providing as follows:

"Now, Therefore, in consideration of the premises the undersigned Lillian Strong, individually and as trustee for Ernest Strong, Irene Strong Gulledge, Ernest Strong, Edgar Strong and James Morgan Strong do hereby and· by these presents forever revoke and cancel the said trust indenture above described, so that the title, free from trust, of all of the property conveyed by said trust indenture shall now vest in said parties in the proportions in which it was originally held at and before the execution of the same."

Immediately after the termination of the February 15, 1935, trust as aforesaid, the appellant tendered to the appellees the property which it had held thereunder and muniments of title thereto. They accepted most of the property so tendered and gave to the appellant receipts therefor.

While the February 15, 1935, trust was in effect, that is, between February 15, 1935, and December 4, 1935, the appellant as trustee thereunder performed substantial services and distributed to·the appellees as beneficiaries of that trust various amounts of principal and income. Although claim was made on the hearing below that the appellees, in making the settlement of the testamentary trust in the manner above described, were not advised by counsel and were ignorant of material facts and of their rights, no effort has ever been made to rescind the February 15, 1935, trust, and *none of the benefits received by the appellees therefrom have been tendered to the appellant. The appellees did not seek the advice of counsel when they executed the instruments on February 15, 1935, but the evidence shows that the documents*

*were read and understood by the appellees and were voluntarily signed of their own free will and accord. No question was then raised with reference to the compensation which the trustee had theretofore received for its services under the testamentary trust.*

*By virtue of their action on December 4, 1935, through and with the advice of their counsel, they have, since that date, held, free from trust, the title to all the investments, with which they seek to surcharge the appellant.*

It is pertinent to observe that appellees acted under advice of counsel. It is averred in the bill that:

"6. * * * heretofore and on, to-wit: the 15th day of February, 1935, the said Trust .Company, while the said trust relationship still existed, summoned the Complainants herein to its office, and there without disclosing to Complainants the acts hereinbefore catalogued; without disclosing to any of them the fact that it had made illegal investments of the trust funds; without apprising them of the liability of the said Trust Company.for said wrongful acts, attempted to make a partial settlement of the administration of said trust, and attempted in said partial settlement to secure some form of sanction or approval of its act as trustee under the trust created by the will of the said James E. Strong, deceased. That Complainants were totally and wholly without any knowledge of the matters, facts and things herein set forth; and without knowledge of the fact that the estate of said decedent had been in effect squandered and wasted until approximately, to-wit: some sixty days prior to the filing of this bill of complaint. That promptly they learned the status of the estate they consulted legal counsel to ascertain their legal rights, and were apprised of their rights to insist that the terms of the trust imposed upon the said Trust Company by the Will of James E. Strong, deceased, be strictly complied with. * * *."

Exhibit 10 is set out by the reporter.

This shows competent legal advice under which appellees acted. When the whole record is considered, we are of the opinion that the respective parties were intelligent and fully informed in their own proper person or by counsel and were not the subjects of improper advice or misunderstood any of the acts or advice of the executor or trustee.

The will was admitted to probate by the Probate Court of Jefferson County, Alabama, and on March 9, 1929, the appellant duly qualified as the executor.

The administration of the estate was removed to the Circuit Court in Equity, the court below. John L. Bromberg, Manager of the Real Estate section of the Trust Department, appraised the real estate for the purpose of determining the amount of federal estate tax due by the executor. The valuations first fixed by the executor were increased by the Government to the extent of three or four thousand dollars. The executor settled the federal estate tax liability with the United States Government.

Statements showing the valuations in the federal estate tax return were sent to the appellees. On October 23, 1930, the appellant filed in the circuit court its petition and accounts for final settlement as executor. The accounts showed the payment by the executor of $4,323.14 to the United States Government as federal estate taxes on January 6, 1930. Each of the appellees was a party to the proceedings. After the account was filed, the circuit court fixed December 1, 1930, as the date for hearing and determining the petition and accounts, and ordered the Register to audit the account and vouchers and to state the account and give notice of the filing and hearing thereof to all interested parties as required by law. The Register's report was filed December 1, 1930, and ordered to lie over three days for exceptions. *On December 9, 1930, no exceptions thereto having been filed, a decree was entered by the Circuit Court ratifying and confirming the report and discharging the executor from any further liability.*

The record shows that on March 15, 1937, the respective parties by counsel and in their own proper respective persons instituted a partition proceeding of the real properties coming from testator and that there was final decree in their behalf on September 23, 1937. The record shows that theretofore, on April 24, 1936, demand for delivery by the trustees to their agent, W. B. Phillips & Company of "all rental agreements, deeds, abstracts, fire and tornado insurance policies and like documents and papers covering our uncontested properties, that is, the properties where we are the sole owners of the entire interest, including mortgages," had been made and compliance with such demand was made.

It is insisted that the bill fails to aver an offer to restore the status quo. Under the rule that obtains generally in the case of rescission, return is not required of the properties to which the other party was entitled at all events.

Many phases of this case, presented for decision on appeal, were treated by Mr. Justice Bouldin in First National Bank, as Trustee, et al. v. Basham et al., Ala.Sup., 191 So. 873.[1] It is not necessary to reassert the principles there announced as we are of opinion that we should not recede from any positions taken in that case on principles announced and applied as to trustees and cestui que trustent in their respective rights, relations and duties in dealing with trust properties. Under the testamentary instrument and under agreement for continuation of the trust after settlement of the administration by such personal representatives, these rules obtain as to these parties and properties.

The questions of estoppel and of ratification of acts of personal representatives and of trustees were not considered in the Basham case, supra. Such subjects will be considered at length here.

Mr. Chief Justice ANDERSON asked counsel on oral argument if there was application here for the rules of ratification and estoppel by judgment; or whether assertion of a contrary position, doctrine or status, on which one acted to his prejudice in another proceeding or in a court having jurisdiction of the parties and subject matters, and on which parties in interest acted and were materially or injuriously affected are of primary importance in this case. Bromberg v. First Nat. Bank of Mobile, 235 Ala. 226, 178 So. 48; First Nat. Bank v. Burch, 237 Ala. 680, 188 So. 859; Wright v. Fannin, 229 Ala. 278, 156 So. 849; Watt v. Lee et al., 238 Ala. 451, 191 So. 628.

The pertinent inquiry may likewise have been made of the kindred rule, when parties with a knowledge of all the relevant facts elect to affirm and accept the benefits of a settlement or contract and (in this case) having benefit of the participations (here made the subject of controversy), they are bound thereby and are precluded from assuming a contrary position in another suit. Watt v. Lee, 238 Ala. 451, 191 So. 628.

The general rule is stated to be that a cestui que trustent who, with knowledge of all the facts (and here under advice of counsel) accepts the proceeds of an investment made by the trustee, is thereafter precluded from surcharging the trustee on grounds that such an investment was improperly made. The receipt of the proceeds under such circumstances, it is insisted, amounts to a ratification by the cestui que trustent of acts of the trustee whether or not originally subject to attack.

The application of such rule was recently made in Blair v. Brooks, 234 Ala. 129, 173 So. 851; Marx v. Clisby, 130 Ala. 502, 30 So. 517, 521. The principle is there stated, as follows:

"The case, then, is clearly governed by the principle announced in Woodstock Iron Co. v. Fullenwider, 87 Ala. [584], 586, 6 So. 197, 13 Am.St.Rep. [73] 75: 'It is deemed unconscionable that the heirs or devisees shall reap the fruits of the purchaser's payment of money, appropriated to the discharge of debts which were a charge on the lands, and at the same time recover the lands. They are estopped to deny the validity of the sale and at the same time enjoy the benefits derived from the appropriation of the purchase money. And this principle applies to minors as well as adults.' This doctrine has often been declared and enforced in this court alike as to adults and infants. Goodman v. Winter, [64 Ala. 410, 437, 38 Am.Rep. 13], supra; Bell v. Craig, 52 Ala. 215; Robertson v. Bradford, 73 Ala. 116; Bland v. Bowie, 53 Ala. 152; Hobbs v. Nashville, Chattanooga & St. Louis R'y, 122 Ala. 602, 26 So. 139 [82 Am. St.Rep. 103]."

In the recent case of Watt v. Lee, Ala. Sup., 191 So. 628,[2] the appellant had dealt with the properties, made the subject of the later suit, as that of a joint ownership and she was denied the right in the subsequent suit to change for position to the injury of the other party and to declare and recover as the absolute owner against the heir at law of a former alleged joint owner. To like effect are the decisions rendered in the cases of Bromberg v. First Nat. Bank, supra, and First National Bank v. Burch, supra.

It should be said of the Marx and Blair cases, supra, that in the former a trustee borrowed money for the estate, secured the same by a mortgage on real property which had been devised to him as trustee by testator; being unable to pay such claim against

---

[1] 238 Ala. 500.  [2] 238 Ala. 451.

the estate at maturity, an agreement of extension was made on condition that the trustee give additional security, which was done by the addition of a new lot "Y". This additional security had not been owned by testatrix and the trustee was without authority to incumber it for the payment of her debt. The additional mortgage and security was foreclosed for non-payment and both tracts of land were thus sold. The cestui que trustent sought to repudiate this agreement and later to establish their right or heirship in said lot "Y", which trustee sought to convey as additional security. The effect of the holding was that the purchase at the sale extinguished a valid claim against the estate; that the beneficiaries could not recover lot "Y" without tendering back the benefits thus secured and obtained.

The bill in the Marx case, supra, contained no offer to do equity and was, for such reason, dismissed. It is stated in the opinion that the doctrine of estoppel being invoked, the complainants are not entitled to relief sought without being required to do equity and without such an offer, the court was "without power or jurisdiction to render a decree against them requiring them to do equity."

The foregoing will illustrate the holdings of this court on the questions of election, ratification or estoppel.

Counsel for appellant invoke the considerations of decisions from other jurisdictions, which we find pertinent and to which we advert at this point.

In Washburn v. Benedict, 1899, 46 App. Div. 484, 61 N.Y.S. 387, 391, Mrs. Washburn had a claim for $5000 secured by a lien on her husband's farm. She bequeathed that sum to her husband as trustee to pay her sons $2500 each when they became of age. The husband sold the farm taking a purchase money mortgage running to himself as "executor." He thereafter assigned the mortgage for its full face value. The sons of Mrs. Washburn sued to rescind that assignment. The court held that the suit attacking the assignment affirmed the trustee's power to take the mortgage in the first place, and that a trustee rightfully holding a mortgage has an undoubted power to assign it for its full face value. In the course of its decision the court said:

"By assailing this assignment the plaintiffs have ratified the sale to Emma Reid and her mortgage to the executor. If the abrogation of the original lien was to be attacked, it must be by suit in some form to reimpress their lien upon the land. Instead of that, they affirm the sale and the giving of the mortgage, and rest their case upon the alleged invalidity of the assignment. We have, therefore, a transaction which brings the mortgage into life, and into the custody of the executor, as a security unchallenged and satisfactory to the plaintiffs. The character of the original lien, the right of the executor to satisfy the same by the receipt of this mortgage, and the honesty and good faith of Mrs. Reid in the purchase of the land and in the giving of the mortgage, and Washburn's good faith in its acceptance, and the conditions of the mortgage itself, are all confirmed by this suit, which is aimed to set aside the assignment of the mortgage, and vest that instrument in these plaintiffs as the beneficiaries of their mother. They cannot both attack and vindicate these various transactions."

In Washburn v. Rainier et al., 149 App. Div. 800, 134 N.Y.S. 301, 304, Washburn was a creditor of the X corporation. The X corporation sold to the Y corporation all of its assets under an agreement by which the latter assumed payment of all its debts. Washburn subsequently proved his claim against the X corporation in the bankruptcy of the Y corporation, and it was allowed. He thereafter sued Rainier, a director of the X corporation, asserting that the sale was fraudulent as to him. It was held that by entering the claim in the bankruptcy of the Y corporation Washburn ratified the sale, and that, having held the Y corporation to the contract of sale, he could not thereafter sue the director of the X corporation on the ground that the contract was fraudulent. In the course of that decision the court said:

"If a trustee in contravention of his trust dispose of his trust property, the beneficiary can elect to regard the act done for or against his advantage; but he cannot assert both. He may gain the proceeds of the unauthorized act, but that forecloses subsequent disclaiming of interest in it. Hine v. Hine, 118 App.Div. 585, 103 N.Y. S. 535; Washburn v. Benedict, 46 App.Div. 484, 61 N.Y.S. 387."

In Warner v. Hill, 153 Ga. 510, 112 S. E. 478, 479, an administrator purchased at his own sale of the testator's realty. It was held that the plaintiff by accepting the proceeds of that sale ratified the administrator's act. In the course of its decision the court said:

"But the actual receipt of these funds by these wards is not necessary to show their ratification of the illegal sale of this land by the administrator. Of course, the receipt by them of their portions of these funds, with knowledge of the facts, would ratify the illegal sale of the administrator. When their guardian received their portions of the proceeds of this sale from the administrator, and they afterwards, with knowledge of the facts, receipted him therefor, this would amount to a ratification of his act in their behalf and of the administrator's sale. * * * When they did this and receipted him as their guardian for these funds, they ratified his act in receiving them, and thus ratified the sale of the administrator of this land from which these funds arose. * * *

"These children had the right, had they chosen to exercise it, to repudiate the act of their guardian in receiving these funds. Instead of doing so, they chose to adopt his act and to receipt him for these funds. * * * The acceptance of the benefit flowing from an unauthorized act amounts to an implied ratification of such act, whether the principal intends to ratify it or not."

In Rohne v. Horton, 180 Wash. 428, 40 P.2d 134, 138, the settlor by will directed the trustee to hold or sell two separate pieces of realty as a unit. The trustee organized a corporation to hold the realty. The cestui, acting with full knowledge and under the advice of competent counsel, accepted the shares of that corporation, to which she was entitled, at the termination of the trust. She thereafter attacked the organization of the corporation as an improper act on the part of the trustee and sought to surcharge the latter therefor. The court held that the cestui by accepting the shares of the corporation under such circumstances had ratified the trustee's act in organizing it. In the course of that decision the court said:

"* * * we consider appellant bound by her election when, after she became· of age, or married, she accepted the stock of the corporation, when she was bound by full knowledge of the facts and advised of her legal rights as she must have been. *She had learned and able counsel then and now.*" [Italics supplied.]

In Farr v. Hartley, 95 Utah 358, 81 P. 2d 640, 642, a bank-trustee purchased from itself five notes secured by a mortgage on account of five trusts being administered by it and assigned to each of them a par-ticipating interest. The trustee later became insolvent. The cestuis of two of the trusts thereafter accepted an assignment of their respective notes and a proportionate participating interest in the mortgage with knowledge of all facts. The bank commissioner later purchased the interests of the cestuis of the other three trusts. Finally, the mortgage securing the notes was foreclosed. The cestuis of the two trusts mentioned above now seek to have the court declare that they have a lien on the property securing the notes prior to that of the bank commissioner on account of the bank-trustee's fraudulent purchase of them from itself. The court held that the cestuis, by accepting the notes and their proportionate participating interest in the mortgage ratified the trustee's original act and so precluded themselves from the relief sought.

"The conduct of respondents in accepting their notes and taking an assignment of their 'proportional' interest in· the mortgage was a complete ratification of the prior acts of the Bank and exonerated it from any liability which might have arisen because of its 'self-dealing.' "

In addition to these cases, a decision was handed down this year by the Supreme Court of Wisconsin on facts having an amazing similarity in detail with those now presented to this court. In re Schlicht's Estate, 285 N.W. 730, 732. There, as here, the cestui, at the termination of the testamentary trust according to its terms, had entered into a new agreement with the bank-trustee by which he acknowledged receipt of the securities making up the corpus of the estate and reconveyed them to the bank as his agent. Two years later the cestui, already having knowledge of all relevant facts, acquired knowledge of the legal rights which he asserted in this case. The cestui thereafter terminated the second, inter vivos trust. Some time later he brought suit attempting to surcharge the trustee on account of those purported legal rights. Although the instrument which he signed at the termination of the trust contained a clause expressly releasing the trustee from any liability on account of its management of the trust, the court held that his retention of the securities had under the circumstances amounted to a ratification of the trustee's acts, entirely apart from any effect which might otherwise have been given to the release.

In the Schlicht case, supra, the court said:

"On the **other** hand Schlicht, by retaining ownership and all rights to the trust assets, and withdrawing the Nichols security from the Bank, and bringing a foreclosure action thereon which resulted in a judgment under which he bought in the property, can be deemed to have ratified the wrongful investment therein and holding thereof by the trustee."

The foregoing decisions in this and other jurisdictions shed light upon material facts disclosed by this record. That is to say, the cestuis acquired title to all the assets of the trust estate by the operation of law upon the termination of the testamentary trust of February 14, 1935, and on the next day entered into an agreement providing that they held title to the participations by name to the Birmingham Trust & Savings Company as trustee under a new, inter vivos trust, thereby revesting themselves with the legal title to these participations, at a time when they had full knowledge of all the facts now complained of and were acting by and under the advice of counsel. When, on December 4, 1935, they revoked the last indicated trust (the one of February 15, 1935), reinvesting in themselves the legal title to these participations and aliquot interests, this solemn action was taken at a time and under circumstances as and when they had full knowledge of the facts complained of, and in such action they had, as aforesaid, benefit of advice of counsel as to their rights, interests and properties.

On the last named date, December 4, 1935, pursuant to the provisions of the trust indenture of date of February 15, 1935, appellees by their counsel tendered to the trustee and duly filed for record in the office of the Judge of Probate an instrument reciting the creation of the trust of February 15, 1935, and providing, among other things, as we have indicated above, for retaking their properties conveyed by the trust indenture.

Thereafter, as we understand the record, appellees as such cestui que trustent took and held the legal as well as the equitable title to such participations and properties from the time indicated to that covered by this suit to decree. We find no effort of rescission of the agreement by which they accepted or receipted for such properties at the termination of the respective trusts. Having elected to take and hold the title to such participations and properties, with knowledge of the facts and of their rights within the law, under the rule of the cases we have cited, the widow and the respective heirs, immediate parties in this case, are precluded from an attempt to surcharge the trustee for having originally invested such properties in the participations indicated.

It has been stated that Mr. Strong's will was construed and the life tenant declared the party in interest to the immediate incomes and profits, and, therefore, subject to the immediate effect of the amount of the trustees' compensation. The record shows she received statements disclosing the quarterly deductions for compensation to the trustees, and that on one or more occasions the trustees were approached and the amount of compensation discussed by the party in immediate interest.

It will be further observed that the testator had selected the personal representative and trustee and was presumed to have been familiar with the usual and reasonable charges and expenses of such administration. King v. Porter, 230 Ala. 112, 160 So. 101.

That is to say, the settlement of the testamentary trust and the trust created by the agreement of the parties (evidenced by the contemporaneous written instruments of date of February 15, 1935), concluded the right of the life tenant to recover from the trustee any compensation it had received. It is interesting to note, as we have stated, that not only the several beneficiaries have reinvested themselves with the title to the properties conveyed by the instruments of February 15, 1935, and received payments thereon, but one of the appellees filed a bill against the other for division of the joint real properties and final decree was entered therein. The several positions taken and the contractual obligations assumed and discharged bring this case within the rule of Bromberg v. First National Bank, 235 Ala. 226, 178 So. 48, and First National Bank v. Burch, 237 Ala. 680, 188 So. 859.

From the foregoing authorities and under the pertinent facts disclosed by the record, it follows that the beneficiaries in the trust, with a full knowledge of all the facts (with advice of counsel at the time indicated), accepted the proceeds of the several investments made by the trustee (appellant), and were and are, therefore, precluded

from surcharging said trustee on the grounds that such investments were improperly made.

The foregoing renders unnecessary a decision on the insistences made on cross assignment of error.

The trial court was under an erroneous impression as to the principles of law applicable· which were so well stated in the Basham case, supra, in which decision was rendered after this appeal was taken. The effect of Basham decision is ·to say that the final decree of the circuit court (there appealed from) set up a standard of responsibility, in respects indicated, to which trustees could not reasonably conform in the practical administration of such trust estates.

In Bowden v. Citizens' Loan & Trust Co., 194 Minn. 113, 259 N.W. 815, 818, the Supreme Court of Minnesota said:

" * * * But it must also be remembered that the liability of a fiduciary is not ·that of an insurer or guarantor. The trust company owed to the beneficiaries good faith coupled with honest and intelligent judgment. 'It did not guarantee that it was free from the human limitations going with the exercise of ordinary prudence, judgment, and discretion."

There has been no loss on account of any of the investments complained of. If any ·loss therefrom is hereafter sustained, it will be a loss "born of the depression" and not of any default on the part of the trustee. In re Harton's Estate, 331 Pa. 507, 1 A. 2d 292, 299.

The investment by the trustee of funds of the Strong trust in participations in loans secured by first mortgages on real estate was not forbidden by the provisions of the will by which the trust was created.

The purchase by the trustee for the Strong trust of participations held by other trusts administered by the trustee was not a breach of trust. First Nat'l. Bank, etc., v. Basham, supra; In re Sheldon's Will, 160 Misc. 194, 289 N.Y.S. 887, 890; In re Young's Estate, 159 Misc. 611, 288 N.Y.S. 569; In re Harton's Estate, 331 Pa. 507, 1 A.2d 292.

It follows from the above that the decree of the trial court should be and is reversed, and a decree here rendered dismissing the bill as amended.

Reversed and rendered.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.