easement to be taken thereby, the Supreme Court read into the acts the constitutional provision, affecting all legislation, that private property could not be taken for public use without due compensation. It was error, therefore, to exclude the evidence offered.

The judgment appealed from should be reversed, and a new trial ordered, with costs to abide the event. All concur.

---

· (118 App. Div. 585)

### HINE v. HUNTINGTON et al.

(Supreme Court, Appellate Division, Fourth Department.   March 6, 1907.)

1. EXECUTORS—MANAGEMENT OF ESTATE—COEXECUTORS.

   An executor, who suffered a stroke of paralysis, and was thereafter in poor health till his death, could not be charged with any breach of trust because he left practically all the business of the estate to be, transacted by his coexecutor, who was an attorney in good practice, had acted as the decedent's attorney before his death, and was apparently competent and trustworthy in every way.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, §§ 508–522.]

2. SAME—EXCHANGE OF PROPERTY.

   Executors who held realty by virtue of the foreclosure of a mortgage in favor of the estate were not entitled to exchange it for other realty, and. unless the persons entitled to share in that part of the estate consented . to or ratified the trade, the executors were liable to account for the value of the realty conveyed by them.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, §§ 621, 623, 627.]

3. SAME—RATIFICATION—ASSIGNMENT OF INTEREST.

   Where executors made an unauthorized exchange˜of realty, receiving property subject to a mortgage, which was afterwards foreclosed, a devisee who assigned his "claim, if any," to the surplus proceeds of the foreclosure, thereby ratified the act of the executors, and was not entitled to a share in the value of the realty conveyed by them in the exchange, though the assignment stated that the assignor made no claim to the surplus proceeds, and that the incumbered property was bought by the executors without his consent.

4. ELECTION OF REMEDIES—INCONSISTENCY OF ALTERNATIVE REMEDIES.

   Where, on the sale of property of a decedent's estate, one received the securities for a share of the price which others were entitled to, and afterwards assigned the securities to the surviving executor, a proceeding by the persons so entitled to compel the executor to account therefor is an election of remedies barring their right to proceed against the assignor.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Election of Remedies, §§ 3, 12.]

   Spring, J., dissenting in part.

Appeal from Special Term, Onondaga County.

Action by Ambrose Hine against Harriet A. Huntington, as executrix of Allen Hine, and others.   From a judgment in favor of plaintiff. defendants appeal.   Reversed, and new trial ordered.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Daniel A. Pierce, for appellants.
. Homer Weston, for respondent.

ROBSON, J. No controverted question of material fact appears in the record presented in this case, and a recital of the facts disclosed by the evidence will direct us to the well-settled principles of law to be applied in determining the rights of the parties to the action, which the judgment should have declared. The plaintiff, with his two brothers, Norman and Allen Hine, and his sister, Harriet A. Huntington, were residuary legatees and devisee in equal shares under the will of Josiah Hine, their father, who died April 21, 1890. This will was admitted to probate May 14th of that year, and letters testamentary thereon were on that day duly issued to the two sons, Norman and Allen, who were named therein as executors. Josiah Hine left a considerable estate, a large part of which has been paid and distributed to those entitled thereto, and all the specific and general legacies have been discharged, and the residuary legatees are now the only persons whose rights and interests have not been fully and satisfactorily adjusted.

The testator, prior to his death, had foreclosed a mortgage, securing the payment of $4,400, upon a farm which is referred to as the "Stearns Farm," upon which mortgage there was then due the sum of $2,000 and to become due the sum of $2,400. On the sale pursuant to the judgment of foreclosure the property had been struck off to Norman Hine, who was the plaintiff's attorney in that action. The deed of the premises was not delivered until the executors had qualified, when title was taken by them in their individual names, and not in their representative capacity. This sale was afterwards duly confirmed; the purchase price, for which the premises had been originally struck off on the sale, and expressed as the consideration in the deed, being $2,187.81. Nothing was paid by Norman and Allen personally as consideration for the transfer to them. Nothing beyond the title to this farm seems to have been obtained on the mortgage security, and it does not appear that anything beyond that could have been secured. Of course, it is unimportant whether title was taken by the executors in their names as individuals, or with the addition denoting their representative capacity as executors. They would still hold the property in trust, and the property they thus acquired, as was said in Haberman v. Baker, 128 N. Y. 261, 28 N. E. 370, 13 L. R. A. 611, at once took on the character of the mortgage indebtedness, and was as personalty in their hands, which they could dispose of and were liable to account for as such. Lockman v. Reilly, 95 N. Y. 64. This farm being assets in the executors' hands, it was their duty in the due administration of the estate to use reasonable diligence to so dispose of it that the proceeds could be seasonably distributed to those entitled thereto. Instead of selling this farm, the executors rented it for two years, and then in effect traded it with one Adams for property in the city of Syracuse. The deed which they gave to Adams expressed a consideration of $4,000, and in the deed which Adams gave them the consideration was stated as $7,000; but this latter transfer was subject to a mortgage of $3,200. No money passed between the parties on account of their transfers, and the sole actual consideration was the reciprocal transfer of property from one party to the other. The property thus conveyed to them may be conveniently referred to hereafter as the Adams property.

Norman Hine, though not the sole acting executor, did in fact do practically all the business of the estate. The only business in connection with the estate that Allen Hine transacted was, as Norman testifies, to sign the first check drawn on estate funds and execute the deed of the Stearns farm. No criticism whatever can be made on his conduct in this regard, for he had suffered a stroke of paralysis before this deed was given, and was thereafter, till his death in October, 1899, in poor health. His coexecutor, Norman, was at this time an attorney in good practice, who had acted as his father's attorney before the latter's death, and was apparently competent and trustworthy in every way. It was entirely natural and proper, therefore, that Allen should, as he did, leave the management of the business of the estate to Norman, and no breach of trust or negligent omission of duty as an executor can properly be charged to him because he did so.

The disposition which the executors made of the Stearns farm, to which reference has already been made, was not one which the law sanctions; and, unless the persons, entitled to share in that portion of testator's estate, either consented to the trade, or in effect subsequently ratified it, the executors were personally responsible to account for the value of the Stearns farm at the time it was conveyed in exchange to Adams. Garner v. Germania Life Insurance Co., 110 N. Y. 267, 18 N. E. 130, 1 L. R. A. 256; King v. Talbot, 40 N. Y. 76.

The trial court has in this action fixed the value of this farm in one of the findings of fact at $4,400, and in a subsequent finding at $4,000, and has held the estate of Allen Hine responsible to the plaintiff for one quarter of the latter sum, to which interest at the rate of 6 per cent. from the date of transfer has been added. If it were necessary in determining the disposition of this case to pass upon the correctness of the court's finding as to the value of the premises and the proper rate of interest, with which Allen's estate should be charged, we would be inclined to hold that both the value of the farm and the rate of interest fixed by the court were excessive. But the view we entertain, as to this branch of the case, does not involve a consideration of the value of the Stearns farm. The Adams property, which the executors took in exchange for the Stearns farm, instead of being sold by them was rented until the foreclosure, in 1901, of the mortgage, subject to which the premises had been conveyed to the executors. To this action the surviving executor, Norman, the representatives of the estate of Allen, who was then deceased, and the other residuary legatees and devisees of Josiah Hine, deceased, including Ambrose Hine, the plaintiff in this action, were made parties defendant. This foreclosure resulted in the production of a surplus of $1,170.24, which was in due course paid into court. This present action, brought by plaintiff to compel the representatives of Allen's estate to account for and pay over to him, as one of the residuary legatees of Josiah Hine, one-fourth of the value of the Stearns farm, as of the date it was transferred to Adams, with interest thereon from that date, was begun on February 3, 1903. Seventeen days prior to the service of the summons in this action, plaintiff assigned to Gen. Hancock his interest in the surplus moneys which resulted from the sale of the Adams prop-

erty. This transfer, which was for value, in writing, under seal, duly executed, acknowledged, and delivered, in the language of the assignment transferred to Hancock, "all my [plaintiff's] right, title and interest and claim, if any, which I may have in or to the surplus moneys arising out of the foreclosure sale, in the above entitled action, authorizing said Theodore Hancock, so far as I am concerned, to collect the same. I distinctly state that I make no claim whatsoever to such surplus moneys or any part thereof; and further state that the property upon which said mortgage was foreclosed was bought by Norman Hine and Allen Hine, or the title thereto was taken without my knowledge or consent." Pursuing the right to the plaintiff's share of the surplus, which this assignment gave him, the assignee received one-fourth of it, as directed by order of the court in surplus money proceedings, duly instituted and concluded. If the plaintiff had himself received without protest this share of the surplus, which was his share as residuary legatee in the net proceeds of the Adams property, it is not questioned that he would have been bound by the election thus made, and could not maintain this action to recover his interest in the actual value of the Stearns farm at the time of the exchange, for he could not at the same time receive and enjoy the proceeds arising from the sale of the property, which but for the transfer complained of, would never have existed, and hold the executors to account for the value of the property transferred, in exchange for which they had received the property from which these proceeds were obtained. King v. Talbot, 40 N. Y. 90. Fowler v. Bowery Savings Bank, 113 N. Y. 450, 21 N. E. 172, 4 L. R. A. 145, 10 Am. St. Rep. 479; English v. McIntyre, 29 App. Div. 439, 448, 489, 51 N. Y. Supp. 697.

But it is urged that the plaintiff in his assignment expressly disclaims any interest in these proceeds, and therefore that the assignment was absolutely void. This can hardly be justly claimed to be the true effect of the assignment. It appears that plaintiff was a party to this foreclosure action, and he must have had full notice of what its purpose was and of the property involved. He also knew that a surplus had resulted on the sale, and that he could collect his interest in it, if he chose to do so. The apparent effort of plaintiff, who was at the time the assignment was made doubtless intent on bringing the present action, which he began less than three weeks thereafter, was to so frame the terms of the assignment as to disaffirm any express or implied ratification of the exchange of the Stearns farm, and at the same time authorize his assignee to collect his share of the surplus. To give to the assignment, which has been acted on, and pursuant to which the share of the surplus, thereby assigned, has been paid over to the assignee, the effect, which it is now urged it should receive, would be manifestly unjust and inequitable. Plaintiff could, if he chose, have declined to recognize the exchange of the Stearns farm as binding upon him in his assertion of interest in that portion of the estate which the farm then represented, and have rejected his apparent interest in the surplus moneys. He could, on the other hand, have ratified the exchange by accepting his share of the proceeds of the property for which the farm had been traded. But he could not at one and the same

time give power and authority to his assignee to collect, as owner, his share of the surplus moneys, and also urge that, because he assigned only his "claim, if any," and did not in terms ratify the exchange, he expressly disaffirmed the exchange by stating in the assignment that he made no claim to the money, and that "the property was bought and title taken without his consent."

Plaintiff had a valid claim to share in this surplus, if he chose to assert it. By the assignment he asserted that claim, because in terms he thereby transferred his "claim, if any," and authorized his assignee to collect it. He had no claim in the surplus to assign, unless he ratified the action of the executors in making the exchange of property. He had an interest, if he did; and the fact that he assumes to assign whatever claim he had in the surplus, if any, necessarily, it would seem, gives to the assignment the effect of a ratification, else nothing passed by his transfer of his claim for which he had received from his assignee a valuable consideration. Plaintiff having by the assignment authorized his assignee to collect the share of the surplus to which, if plaintiff had elected, he would have been entitled, if the assignment had not been made, it seems that he must be held equally bound by his assignee's receipt and acceptance of this share of the surplus as he would have been had he himself received it. It follows that neither the surviving executor nor the estate of the deceased executor is chargeable as to this plaintiff with any sum whatever as plaintiff's share or interest in the Stearns farm or the proceeds or value thereof.

There remains for examination only the affirmative defense by way of counterclaim, which the defendant representatives of Allen Hine, deceased, have interposed to plaintiff's complaint. This is based upon the following facts: Josiah Hine, at his death, owned two mortgages, given by one Barker, securing the aggregate principal sum of $10,-000. Before the death of Allen Hine, his co-executor, Norman, had begun proceedings to foreclose these liens. Both executors were named as plaintiffs in this action, though there is no proof that Allen was ever consulted in reference to the claim, or knew anything of the foreclosure. Instead of completing the foreclosure by a sale of the premises, covered by the lien of the mortgages, under an arrangement made with the mortgagor the property was conveyed by him directly to Norman and Ambrose Hine, and Norman Hine, after the death of Allen, discharged, as executor, the two Barker mortgages. Norman and Ambrose Hine leased and managed these premises for some years after they were transferred to them, and together gave a mortgage on them for $1,000, the proceeds of which were received by Norman personally. They afterwards sold the premises for $8,000, which was paid and secured to be paid by the purchaser assuming the payment of the $1,000 mortgage, paying $1,000 in cash, which Norman received, executing a mortgage for $2,000 to Ambrose and another mortgage for $4,000 to the same person. It was understood between Norman and Ambrose that these amounts of cash and securities should be considered as representing the several shares in the $8,000 purchase price of the premises, to which the four legatees were entitled. Norman's share was provided for by the proceeds of the first mortgage for $1,000, already received by him, and the $1,000 in cash, received on the sale

of the farm. Ambrose's share was taken care of by the $2,000 mortgage, given to him, and Mrs. Huntington's share and the share of Allen's estate made up the sum secured by the $4,000 mortgage to Ambrose. This $4,000 mortgage was taken in the name of Ambrose, as he asserts, without his knowledge, and was in fact after he began the present action assigned by him to Norman. Norman at once used the security to procure a personal loan to himself, and the persons, for whom this security was intended, have been compelled to advance the amount for which he assigned this mortgage as collateral to his personal obligation, in order to procure a transfer of the securities to themselves.

If the representatives of Allen's estate had been content simply to assert the claim that the $4,000 mortgage was taken by plaintiff for their benefit, to be accounted for to them by him, either by transfer of the security or collection and payment to them of the proceeds, we would be constrained to hold that plaintiff took that security in trust for their benefit, and, having assigned it to Norman, is liable to account to the representatives of Allen for the amount necessarily expended by them in recovering the portion of the security to which, in that event, they would be entitled. But they have chosen, as appears by the evidence, to compel Norman, the surviving executor, to account in Surrogate's Court for testator's estate with which he is chargeable. We have before this called attention to the fact that the cestui que trust is at perfect liberty to elect to approve an unauthorized investment and enjoy its profits, or to reject it at his option. But, as we have already said, he must elect whether to affirm or disaffirm the unauthorized investment, and, having once made his election, it is conclusive of his further action in relation to that investment. The representatives of the deceased executor, Allen, therefore had the choice presented to them, either to accept the one quarter interest in the amount for which the Barker property was sold by Norman and Ambrose, or to hold the surviving executor, Norman, responsible for the full amount with which he was properly chargeable, as the amount he should have collected on the Barker mortgages in the due administration of the estate. They chose the latter course, and in the accounting have obtained a decree, by which the executor, Norman, is charged with the full amount of the principal of these mortgages and interest thereon, amounting to $12,777.75. They have thus clearly made their election of remedies, and cannot now insist that plaintiff shall be held responsible for the proceeds of the sale of this property, for which he otherwise would be necessarily bound to account as trustee of a constructive trust.

The judgment appealed from should be reversed, and new trial granted, with costs to appellants to abide the event. All concur, except SPRING, J., who concurs except as to the last proposition discussed in the opinion.

Judgment reversed, and new trial ordered, with costs to the appellants to abide the event.