■ In the Matter of the Estate of EDGAR WOLF LEVY, Deceased. DAVID LEVY, Respondent; JOEL CORCOS LEVY, Appellant. [893 NYS2d 142]—

Edgar Wolf Levy (hereinafter Edgar) died testate on July 6, 1975, leaving his estate to his two sons, the petitioner David Levy (hereinafter David) and the objectant Joel Corcos Levy (hereinafter Joel), who, at the time of his death, were ages 37 and 30, respectively. David was appointed executor of the estate. Edgar's will provided a detailed alternating selection method for the distribution of his personal effects, as well as the artwork he composed and created himself. The residue of the estate, which undisputedly included artwork by numerous other artists, was to be divided equally between David and Joel, but the will provided no details as to how the division of the residue of the estate was to be effected. Several weeks after Edgar's death, David and Joel met to divide, among other things, several significant works of African and modern art that Edgar and his wife, Lucille Corcos Levy, had acquired during their lifetimes. At the time of distribution, no formal appraisals of the artwork held by the estate were obtained. Although the brothers disagree as to the precise method they used for the division and distribution of the artwork covered by the residuary clause of the will, there is a general agreement that some sort of alternating selection method was used, and that David chose first. With his selections, David chose two African reliquary figures, known to the family as the "Fang" and the "Large Kota." Joel was prepared to choose a sculpture by the artist David Smith, known as the "Reclining Figure," which was a likeness of their mother. David, who feared that Joel would sell the sculpture rather than keep it in the family, offered to trade Joel several smaller David Smith pieces, some of which were in the estate and one which he claimed to own personally, for the "Reclining Figure." Joel also made other selections from the collection, including a piece known to the family as the "Small Kota."

In 2004, after Joel petitioned to compel an accounting, David instituted the instant proceeding for the judicial settlement of the account of Edgar's estate. Joel filed numerous objections to David's accounting. The Surrogate's Court conducted a trial,

prior to which Joel narrowed his objections to the distributions of the "Fang," the "Large Kota," and the "Reclining Figure." Joel offered evidence, through the expert testimony of two appraisers, that in 1975 these three pieces were worth $55,000, $20,000, and $40,000, respectively. David offered no evidence to the contrary. The only evidence of the value of the artwork received by Joel related to the "Small Kota." David claimed that Joel had sold it in the 1980s for the sum of $25,000; however, Joel claimed he sold it together with another piece of art for the combined sum of $5,000. Joel claimed that he was never informed of his right under the will to receive one half of the residue of the estate, and that he only participated in the alternating selection process because David, as the executor, directed the method for distribution. He also claimed to have been improperly pressured into trading away the "Reclining Figure." The Surrogate's Court denied Joel's objections, and a decree settling the account was entered. We affirm.

The evidence at trial established that, in the years after the artwork was divided between the brothers, Joel ratified or acquiesced to the distributions at issue. The essence of ratification "is that the beneficiary unequivocally declares that he does not regard the act in question as a breach of trust but rather elects to treat it as a lawful transaction under the trust" (*see* Bogert, Law of Trusts and Trustees § 942 [2d ed]). "Confirmation and ratification imply to legal minds, knowledge of a defect in the act to be confirmed, and of the right to reject or ratify it" (*Matter of Ryan*, 291 NY 376, 417 [1943], quoting *Adair v Brimmer*, 74 NY 539, 554 [1878]). Ratification is "in essence, a waiver of existing rights" (*Matter of Ayvazian*, 153 Misc 467, 475 [1934]). In *Pollitz v Wabash R.R. Co.* (207 NY 113 [1912]), the Court of Appeals held that an "implied ratification" occurs where the beneficiary's subsequent conduct "supports the . . . reasonable conclusion that he [or she], by his [or her] assent thereto or acquiescence therein, has accepted and adopted" the fiduciary's actions (*Pollitz v Wabash R.R. Co.*, 207 NY· at 129). Here, in 1986, Joel's attorney wrote David several times, outlining the "issues that remain with respect to the final resolution of [Edgar's] estate." Notably, there was no mention in those letters of the works of art at issue, an absence which we take as evidence that Joel was satisfied with the division of the artwork. Furthermore, Joel failed to complain until more than 25 years after the distribution, during which time he sold most or·all of the works of art he received, making rescission impossible, and frustrating any effort to attempt to place values on those items as of the time of distribution. Under these circumstances, Joel ratified or acquiesced to the distributions.

In light of the foregoing, the parties' remaining contentions either have been rendered academic or are without merit. Santucci, J.P., Balkin, Eng and Chambers, JJ., concur.