Filed 9/25/15  Brooks v. Pinnacle Financial Corp. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PATRICK BROOKS, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> PINNACLE FINANCIAL CORPORATION et al., <br><br> Defendants and Respondents. | B252060 <br><br> (Los Angeles County <br> Super. Ct. No. BC500541) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rolf M. Treu, Judge.  Affirmed.

Patrick C. Brooks, in pro per., for Plaintiff and Appellant.

Severson & Werson, Kerry W. Franich and Jan T. Chilton for Defendant and Respondent Bank of New York Mellon Trust Company, N.A.

Kuzyk Law and Mark J. Leonardo for Defendant and Respondent DCB United, LLC.

Starre & Cohn and Gary A. Starre for Defendants and Respondents Varougan Karapetian and Vincent Karapetian.

Plaintiff Patrick Brooks (Brooks) contends that the trial court erred by sustaining the demurrers of defendants Bank of New York Mellon Trust Company, N.A (BONY), DCB United, LLC (DCB), and Varougan Karapetian and Vincent Karapetian (collectively, the Karapetians) as to all of his causes of action attacking the nonjudicial foreclosure sale of his house. We conclude that Brooks' claims against BONY were properly dismissed as being barred by the doctrine of res judicata and that the claims against DCB and the Karapetians were properly dismissed pursuant to Brooks' failure to comply with the so-called "tender rule." We therefore affirm the judgment of dismissal.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  Brooks' Loan

In October 2005, Brooks obtained a loan from Pinnacle Financial Corporation (Pinnacle) in the amount of $768,000. The loan was secured by a deed of trust recorded against a house owned by Brooks in Glendale, California. The beneficiary under the deed of trust was Mortgage Electronic Registration Systems, Inc. (MERS), who also acted as the nominee for Pinnacle. The deed of trust, inter alia, authorized the lender to appoint successor trustees.

In November 2007, a substitution of trustee was made with regard to the deed of trust. MERS replaced the original trustee, First American Title Insurance Company, with Executive Trustee Services, LLC (ETS). In December 2009, MERS assigned its beneficial interest in the deed of trust to BONY.

### II.  Brooks' Default, Bankruptcy Proceedings, and Eventual Foreclosure Sale of His House

At some point in or around 2007 to 2008, Brooks stopped making payments on his loan. In April 2008, ETS recorded a notice of trustee's sale, which scheduled the foreclosure sale for May 13, 2008. On May 12, 2008—one day before his house was to be sold at auction—Brooks filed the first of what would be six separate bankruptcy petitions, staying the trustee's sale.

2

On September 29, 2009, Brooks filed his third bankruptcy petition. As with his two prior petitions, the third petition was a voluntary petition for Chapter 13 protection. In February 2010, the third bankruptcy petition was converted to a Chapter 7 proceeding. In February 2010 and again in July 2010, the bankruptcy court issued orders granting BONY relief from the automatic stay so that it could enforce its remedies to foreclose and take possession of Brooks' house. In August 2010, Brooks received a full discharge of his debts. During the course of his third bankruptcy proceeding, Brooks did not disclose any of his claims against BONY.

In July 2012, in connection with Brooks' sixth bankruptcy petition, the bankruptcy court granted BONY's motion for relief from the automatic stay preventing it from selling Brooks' home at a foreclosure sale. In granting BONY's motion, the bankruptcy court, found that Brooks had acted to "delay, hinder or defraud" BONY "by abusive bankruptcy filings." In September 2012, the bankruptcy court barred Brooks from filing another bankruptcy petition for a year.

In October 2012, BONY completed its foreclosure sale, selling the house to DCB. Later that same month, DCB transferred the house to the Karapetians.

III.     **Brooks' First Action Regarding the Loan**

In February 2011, Brooks filed an action against BONY (and GMAC Mortgage Servicing, LLC (GMAC)) in the Los Angeles Superior Court, asserting claims for constructive fraud and negligent misrepresentation (the First Action). According to the complaint, the defendants made various misrepresentations in connection with the origination of the mortgage loan and then improperly recorded a notice of default and "executed a foreclosure." Brooks sought damages and an order rescinding the loan and returning the Glendale house to him and an order compelling the defendants to "negotiate . . . a Rent To Own, Lease To Own or, a buyback of the property with an honest loan."

In April 2011, BONY removed the First Action to federal court on diversity grounds. In May 2011, the federal district court granted BONY's motion to dismiss for failure to state a claim, finding that Brooks had failed to plead either claim with the

requisite particularity.  In addition, the court identified an "additional ground for dismissal":  Brooks' failure to comply with the so-called "tender rule":

"Under California law, a plaintiff must make '[a] valid and viable tender of payment of the indebtedness owing' in order to proceed with an action to set aside a foreclosure sale.  [Citation.]  A plaintiff must likewise allege that he is 'willing and able to tender the proceeds of the loan at issue' before he can proceed with a claim for rescission of the loan.  [Citation.]  Because Plaintiff has not alleged that he has tendered the amount due on the loan, or offered to tender that amount, he cannot proceed with his claims to the extent that they seek rescission of the loan or an order setting aside the foreclosure sale and returning the property to him."

When Brooks failed to file a timely amended complaint, the federal court dismissed the action.  Brooks did not appeal.

## IV.    Brooks' Second Action Regarding the Loan

In February 2013, Brooks filed a second action in Los Angeles Superior Court regarding the mortgage loan on his house in Glendale, his default on that loan, and the nonjudicial foreclosure proceedings occasioned by his default (the Second Action).  Specifically, Brooks asserted claims for cancellation of instruments, violation of the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.), and declaratory relief, arguing in the main that the foreclosure sale was void because, inter alia, the substitution of trustee and assignment were "robo-signed" and MERS's assignment of its beneficial interest in the deed of trust to BONY violated the pooling and service agreement that securitized his mortgage loan with other such loans.  In addition to BONY, Brooks named DCB and the Karapetians as defendants.

### A.    The Trial Court Sustains Defendants' Demurrers to Brooks' Original Complaint

In March 2013, BONY demurred to the complaint on four grounds:  (1) the First Action acts as res judicata to bar the Second Action; (2) the doctrine of judicial estoppel bars any claims against BONY due to Brooks' failure to disclose any claims against BONY in his third bankruptcy proceeding; (3) Brooks' claims are barred under the tender

4

rule; and (4) MERS had the authority to foreclose and, even if it did not, Brooks failed to allege any prejudicial procedural irregularity with the foreclosure.

In April 2013, DCB demurred to Brooks' complaint on two principal grounds: (1) Brooks' failure to comply with the tender rule; and (2) MERS's authority to foreclose. Later that same month, the Karapetians joined in the demurrers by BONY and DCB.

On May 17, 2013, the trial court  sustained the defendants' demurrers on all grounds without leave to amend as to the claims asserted in the original complaint.  The court, however, did grant Brooks' request for leave to amend so as to add "claims for negligence arising out of his request for a loan modification and for voiding the foreclosure sale due to the failure to obtain [Brooks'] express consent to transfer the debt."  The court cautioned that in light of its res judicata and other rulings, it "expresses no opinion as to the sufficiency or validity of [Brooks'] proposed additional claims."

**B.      *The Trial Court Sustains BONY's Demurrer to Brooks' Amended Complaint***

In June 2013, Brooks filed an amended complaint asserting two new causes of action against BONY:  "negligence in loan modification"; and "wrongful foreclosure." In August 2013, BONY demurred to the amended complaint, reasserting its prior arguments about res judicata and judicial estoppel and raising a new argument, to wit, collateral estoppel.  BONY's collateral estoppel argument was based on a successful unlawful detainer action that the Karapetians pursued against Brooks in the spring and summer of 2013.[1]  Because Brooks' challenge to the validity of the trustee's sale was rejected in the unlawful detainer action, BONY argued that the unlawful detainer judgment granting possession of the Glendale house to the Karapetians conclusively determined that the foreclosure sale was held in accordance with the law.

In October 2013, the trial court sustained BONY's demurrer and denied Brooks' request for leave to amend:  "Although [Brooks] has again[ ] requested leave to amend, it

---

[1] On October 24, 2014, the Los Angeles Superior Court Appellate Division affirmed the unlawful detainer judgment.

is clear that [he] cannot allege facts to overcome the application of res judicata, judicial estoppel, and collateral estoppel.  Therefore leave to amend is denied."

## DISCUSSION

### I.        Standard of Review

"'We independently review the ruling on a demurrer and determine de novo whether the pleading alleges facts sufficient to state a cause of action.  (*McCall v. PacifiCare of Cal., Inc*. (2001) 25 Cal.4th 412, 415.)  We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and facts of which judicial notice can be taken.  (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)' . . . [¶]  If the allegations in the complaint conflict with the exhibits, we rely on and accept as true the contents of the exhibits.  However, in doing so, if the exhibits are ambiguous and can be construed in the manner suggested by plaintiff, then we must accept the construction offered by plaintiff."  (*SC Manufactured Homes, Inc. v. Liebert* (2008) 162 Cal.App.4th 68, 83.)

If, as here, the trial court sustained the demurrer without leave to amend, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment.  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred.  (*Ibid*.)  The plaintiff has the burden of proving that an amendment would cure the defect.

**II. Brook's Claims Against BONY Are Barred by the Doctrine of Res Judicata[2]**

Where an action is filed in a California state court and the defendant claims the suit is barred by a final federal judgment, California law will determine the res judicata effect of the prior federal court judgment on the basis of whether the federal and state actions involve the same primary right. (*Agarwal v. Johnson* (1979) 25 Cal.3d 932, 954–955, disapproved on other grounds by *White v. Ultramar, Inc*. (1999) 21 Cal.4th 563.)

Under California law, "'"[t]he doctrine of res judicata gives certain *conclusive effect* to a *former judgment* in subsequent litigation involving the same controversy." [Citation.]'" (*Boeken v. Philip Morris USA, Inc*. (2008) 48 Cal.4th 788, 797.) "Res judicata precludes the relitigation of a cause of action only if (1) the decision in the prior proceeding is final and on the merits; (2) the present action is on the same cause of action as the prior proceeding; and (3) the parties in the present action or parties in privity with them were parties to the prior proceeding." (*Zevnick v. Superior Court* (2008) 159 Cal.App.4th 76, 82.) Res judicata bars the litigation not only of issues that were actually litigated in the prior proceeding, but also issues that could have been litigated in that proceeding. (*Busick v. Workmen's Comp. Appeals Bd*. (1972) 7 Cal.3d 967, 974–975.) "A predictable doctrine of *res judicata* benefits both the parties and the courts because it 'seeks to curtail multiple litigation causing vexation and expense to the *parties* and wasted effort and expense in *judicial administration*.'" (*Mycogen Corp. v. Monsanto Co*. (2002) 28 Cal.4th 888, 897.)

For purposes of applying the doctrine of res judicata, the phrase "cause of action" has a precise and particular meaning: The cause of action is the right to obtain redress for

---

[2] For BONY, this appeal relates to the trial court's orders sustaining its demurrers to both the original complaint and to the amended complaint, because Brooks did not reallege any causes of action against BONY from his original pleading in his amended one. (*National Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Services Group., Inc*. (2009) 171 Cal.App.4th 35, 44.) Correspondingly, because, Brooks did not assert any causes of action against either DCB or the Karapetians in his amended complaint, this appeal only pertains to the trial court's order sustaining their demurrers to the original complaint.

a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced.  (See *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co*. (1993) 5 Cal.4th 854, 860.)

As explained by our Supreme Court, California's res judicata doctrine and its definition of "cause of action" is based upon the primary right theory:

"The primary right theory is a theory of code pleading that has long been followed in California.  It provides that a 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty.  [Citation.]  The most salient characteristic of a primary right is that it is indivisible:  the violation of a single primary right gives rise to but a single cause of action.  [Citation.]

"As far as its content is concerned, the primary right is simply the plaintiff's right to be free from the particular injury suffered.  [Citation.]  It must therefore be distinguished from the *legal theory* on which liability for that injury is premised:  'Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief.'  [Citation.]  The primary right must also be distinguished from the *remedy* sought:  'The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other.'  [Citation.]

"The primary right theory . . . is invoked . . . when a plaintiff attempts to divide a primary right and enforce it in two suits.  The theory prevents this result by either of two means:  (1) if the first suit is still pending when the second is filed, the defendant in the second suit may plead that fact in abatement [citations]; or (2) if the first suit has terminated in a judgment on the merits adverse to the plaintiff, the defendant in the

8

second suit may set up that judgment as a bar under the principles of res judicata."
(*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681–682.)[3]

In short, under California law, the significant factor guiding the application of the doctrine is whether the "cause of action" is for invasion of a single primary right; whether the same facts are involved in both suits is not conclusive. (*Agarwal v. Johnson*, *supra*, 25 Cal.3d at pp. 954–955.)

### A. The Decision in the First Action Was Final and on the Merits

"Full faith and credit must be given to a final order or judgment of a federal court." (*Levy v. Cohen* (1977) 19 Cal.3d 165, 172–173; Code Civ. Proc., § 1908.) A dismissal under rule 41 of the Federal Rules of Civil Procedure (28 U.S.C.) operates as an adjudication "on the merits" unless the dismissal is for lack of jurisdiction, improper venue, or failure to join a necessary party. (Fed. Rules Civ.Proc., rule 41(b), 28 U.S.C.; *Stewart v. United States Bancorp* (9th Cir. 2002) 297 F.3d 953, 956.) In particular, a dismissal under rule 12(b)(6) of the Federal Rules of Civil Procedure (28 U.S.C.) for failure to state a claim is regarded by federal courts as a judgment on the merits. (*Federated Dep't Stores v. Moitie* (1981) 452 U.S. 394, 399, fn. 3 [101 S.Ct. 2424, 69 L.Ed.2d 103]; *Stewart*, at p. 957.) Here, the judgment in the First Action was not for lack of jurisdiction, improper venue, or failure to join a necessary party. Rather, it was for Brooks' failure to state a claim and, as such it was a judgment on the merits.

### B. The First and Second Actions Involved the Same Primary Right

The First and Second Actions involved the same property, the same mortgage loan, the same default on that loan, and the same alleged misconduct by BONY. For example, in the First Action, Brooks alleged that BONY had engaged in fraud by "representing to Plaintiff and to third parties" that it was the owner of his promissory note

---

[3] In contrast, the federal courts utilize a transactional analysis; i.e., two suits constitute a single cause of action if they both arise from the same "'transactional nucleus of facts'" (*Derish v. San Mateo–Burlingame Bd. of Realtors* (9th Cir. 1983) 724 F.2d 1347, 1349, overruled on other grounds in *Eichman v. Fotomat Corp.* (9th Cir. 1985) 759 F.2d 1434, 1437) or a single "'core of operative facts.'" (*Shaver v. F. W. Woolworth Co.* (7th Cir. 1988) 840 F.2d 1361, 1365.)

and deed of trust and had then initiated foreclosure proceedings without disclosing its "true role." In the Second Action, Brooks also alleged (in both his original and in his amended complaint) that BONY had no beneficial interest in the deed of trust and no legal authority to exercise the power to sell the property at a foreclosure sale. Most critically for res judicata purposes, the First and Second Actions allege the same fundamental harm to Brooks—the loss of his Glendale house through foreclosure. In short, although Brooks advanced a number of different legal theories and sought a variety of different remedies in the First and Second Actions, he alleged in both the violation of a single primary right: the right to own the Glendale property.

### C. The First and Second Actions Involved the Same Parties

With regard to the third prerequisite for application of the res judicata doctrine, BONY was a named defendant in both of Brooks' actions.

Brooks attempts to escape from the preclusive effect of the adverse judgment in the First Action by making three principal arguments. First, he argues that the dismissal in the First Action was voluntary and therefore not on the merits, because he elected not to file an amended complaint. Under federal law, however, a voluntary dismissal occurs only if the plaintiff either serves a notice of dismissal before a party answers or a secures a stipulation of dismissal from all of the parties who have appeared. (Fed. Rules Civ.Proc., rule 41(a), 28 U.S.C.) In the First Action, Brooks did not file a notice of dismissal (either before or after the district court granted BONY's motion to dismiss) or secure the necessary stipulation. Moreover, Brooks' argument completely neglects the fact that a dismissal for failure to state a claim is regarded by federal courts as an adjudication on the merits. (*Federated Dep't Stores v. Moitie*, *supra*, 452 U.S. at p. 399, fn. 3.)

Second, Brooks argues that res judicata does not bar his claim against BONY because the First and Second Action involve different claims and facts. For example, in his amended complaint in the Second Action, Brooks asserts a claim regarding his unsuccessful efforts to obtain an acceptable modification of his mortgage loan; this claim

10

and the facts supporting it are not discussed, at least not explicitly, in his complaint in the First Action.[4]

Brooks' argument misses the defining essence of California's res judicata doctrine. For purposes of applying the doctrine of res judicata, the phrase "cause of action" has a precise and particular meaning: The cause of action is the right to obtain redress for a harm suffered, *regardless of the specific remedy sought or the legal theory (common law or statutory) advanced*. (See *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co*. (1993) 5 Cal.4th 854, 860.) "The significant factor," for application of res judicata in California, "is the harm suffered; that the same [or different] facts are involved in both suits is *not* conclusive." (*Agarwal v. Johnson*, *supra*, 25 Cal.3d at p. 954, italics added; see *Burdette v. Carrier Corp*. (2008) 158 Cal.App.4th 1668, 1684.) The harm for which Brooks seeks relief in both the First and Second Actions is the loss of the Glendale property as a result of his default and BONY's subsequent moves to foreclose. Put a little differently, the center of gravity for the First and Second Actions, the pivot point on which all other material allegations hinge in both actions is Brooks' default and BONY's response thereto. Because the primary right at issue in the First Action is identical to the primary right at issue in the Second Action, res judicata applies.[5]

---

[4] The complaint in the First Action, while focused primarily on largely unspecified misrepresentations in the loan origination process, does allude to certain unspecified misrepresentations made "after the loan was produced and signed."

[5] It should be noted that the res judicata doctrine applies not only to claims that were actually litigated in the prior proceeding, but also to claims that *could* have been litigated in that proceeding. (*Busick v. Workmen's Comp. Appeals Bd*., *supra*, 7 Cal.3d at p. 975.) So, for example, with regard to his "new" loan modification claim, it appears from Brooks' own allegations in his amended complaint in the Second Action that such a claim arguably could have been raised in the First Action: he sought a loan modification in 2010 (before he filed the First Action) and received a modification which he rejected as unacceptable in 2011. It is unclear from Brooks' pleading whether his receipt of the unacceptable modification occurred before or after the court-ordered date to file an amended complaint passed.

11

Third, Brooks argues that he could not assert his wrongful foreclosure claim until his amended complaint because such a theory was not "legally cognizable" until the summer of 2013, when the Fifth Appellate District issued its opinion in *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079 (*Glaski*). Whatever the merits of *Glaski* with regard to a plaintiff's standing to attack an agreement to which he is not a party,[6] Brooks'

---

[6] In *Glaski*, *supra*, 218 Cal.App.4th 1079, the plaintiff alleged a cause of action for damages for wrongful foreclosure. The theory of the complaint in that case was that an attempted transfer of the loan into a securitized trust located in New York was void; thus, the foreclosing entity was not the true owner of the loan. The trial court sustained the trustee's demurrer without leave to amend. The court in *Glaski* reversed. In reversing, the *Glaski* court determined that a borrower has standing to attack a void assignment to which it is not a party. (*Id.* at p. 1095.)

Although some California federal courts have followed *Glaski*, *supra*, 218 Cal.App.4th 1079 (see *Engler v. ReconTrust Co*. (C.D.Cal., Dec. 20, 2013, No. CV12-1165 CBM (SPx)) 2013 U.S.Dist. Lexis 179950) and *Kling v. Bank of America, N.A*. (C.D.Cal., Sept. 4, 2013, No. CV 13-2648 DSF (CWx)) 2013 U.S.Dist. Lexis 184981, most have found the decision unpersuasive. (See *Haddad v. Bank of America, N.A*. (S.D.Cal., Jan. 8, 2014, No. 12cv3010-WQH-JMA) 2014 U.S.Dist. Lexis 2205; *Subramani v. Wells Fargo Bank N.A*. (N.D.Cal., Oct. 31, 2013, No. C 13-1605 SC) 2013 U.S.Dist. Lexis 156556; *Dahnken v. Wells Fargo Bank, N.A*. (N.D.Cal., Nov. 8, 2013, No. C 13-2838 PJH) 2013 U.S.Dist. Lexis 160686; *Maxwell v. Deutsche Bank Nat. Trust Co*. (N.D.Cal., Nov. 18, 2013, No. 13-cv-03957-WHO) 2013 U.S.Dist. Lexis 164707; *Apostol v. CitiMortgage, Inc*. (N.D.Cal., Nov. 21, 2013, No. 13-cv-01983-WHO) 2013 U.S.Dist. Lexis 167308; *Zapata v. Wells Fargo Bank, N.A*. (N.D.Cal., Dec. 10, 2013, No. C 13-04288 WHA) 2013 U.S.Dist. Lexis 173187; *Rivac v. Ndex West LLC* (N.D.Cal., Dec. 17, 2013, No. C 13-1417 PJH) 2013 U.S.Dist. Lexis 177073; *Sepehry-Fard v. Dept. Stores Nat. Bank* (N.D.Cal., Dec. 13, 2013, No. 13-cv-03131-WHO) 2013 U.S.Dist. Lexis 175320.) Additionally, the Second Circuit Court of Appeals has rejected *Glaski*'s view of New York law, and has concluded defective transfers of deeds of trust are voidable, not void. (See *Rajamin v. Deutsche Bank* (2d. Cir. 2014) 757 F.3d 79, 90 (*Rajamin*).)

The decision in *Glaski*, *supra*, 218 Cal.App.4th 1079 has also come under criticism from other California appellate courts, including the Second and Third Districts. Our Supreme Court has granted review in three such cases. (*Yvanova v. New Century Mortg. Corp*. (2014) 226 Cal.App.4th 495, review granted Aug. 27, 2014, S218973; *Keshtgar v. U.S. Bank, N.A*. (2014) 226 Cal.App.4th 1201, review granted Oct. 1, 2014, S220012; *Mendoza v. JP Morgan Chase Bank, N.A*. (2014) 228 Cal.App.4th 1020, review granted Nov. 12, 2014 S220675.)

12

argument with regard to *Glaski* and the applicability of the res judicata doctrine is unavailing. It is well-established that a change in case law is not a sufficient reason for denying the preclusive effect of a prior judgment between the parties:

"'In every instance where a rule established by case law is changed by a later case the earlier rule may be said to be "mistaken. . . ." Such "mistakes" or "injustices" are not a ground for equity's intervention. So to hold would be to emasculate, if not wipe out, the doctrine of res judicata because *the doctrine is most frequently applied to block relitigation based upon contentions that a law has been changed. Our courts have repeatedly refused to treat the self-evident hardship occasioned by a change in the law as a reason to revive dead actions.*' [Citation.] . . . [*W*]*here the only 'mistake' made in the earlier proceedings was in assuming that the law would remain unchanged, there is no discretion to reject the defense of res judicata.*" (*Slater v. Blackwood* (1975) 15 Cal.3d 791, 796–797, quoting *Zeppi v. State of California* (1962) 203 Cal.App.2d 386, 388–389, italics added.)

In sum, we find that Brooks' claims against BONY in both the original complaint and in the amended complaint are barred by the doctrine of res judicata. As a result, we need not reach the issue of whether those claims are also barred by judicial estoppel and/or collateral estoppel or the other arguments raised by BONY. In considering whether the trial court abused its discretion in dismissing Brooks' amended complaint without leave to further amend, we find that it did not. Brooks has not met his burden of establishing that there is a reasonable probability that he can allege facts to cure the preclusive effect of res judicata. Accordingly, the orders of the trial court with respect to BONY are affirmed.

## III. Brook's Claims Against DCB and the Karapetians Were Properly Dismissed Without Leave to Amend Due to Operation of the Tender Rule

"To obtain the equitable set aside of a trustee's sale or maintain a wrongful foreclosure claim, a plaintiff must allege that (1) the defendants caused an illegal, fraudulent, or willfully oppressive sale of the property pursuant to a power of sale in a mortgage or deed of trust; (2) the plaintiff suffered prejudice or harm; and (3) the plaintiff

13

tendered the amount of the secured indebtedness or was excused from tendering." (*Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1062.)

California courts have recognized the tender rule for more than a century. "'[O]ur Supreme Court, in one of its earliest decisions on the subject, said: [¶] "' . . . It is apparent from the general tenor of the decisions that an action to set aside the sale, unaccompanied by an offer to redeem, would *not* state a cause of action which a court of equity would recognize.'"'" (*Leonard v. Bank of America etc. Assn.* (1936) 16 Cal.App.2d 341, 344, quoting *Copsey v. Sacramento Bank* (1901) 133 Cal. 659, 662.)

Courts have routinely found the tender rule applicable in postforeclosures cases (i.e., in actions challenging a completed foreclosure sale, as opposed to actions seeking to prevent the sale in the first place). (See, e.g., *United States Cold Storage v. Great Western Savings & Loan Assn.* (1985) 165 Cal.App.3d 1214, 1224–1226 (*United States Cold Storage*) [affirming grant of nonsuit where plaintiff challenged irregularities in sale notice or procedure after trustee sale was held but failed to tender the amount due]; *Arnolds Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575, 578 (*Arnolds Management*); *Abdallah v. United Savings Bank* (1986) 43 Cal.App.4th 1101, 1109; *Karlsen v. American Sav. & Loan Assn.* (1971) 15 Cal.App.3d 112, 117 (*Karlsen*).)

"This rule is premised upon the equitable maxim that a court of equity will not order that a useless act be performed." (*Arnolds Management*, *supra*, 158 Cal.App.3d at pp. 578–579; see *FPCI RE–HAB 01 v. E & G Investments, Ltd.* (1989) 207 Cal.App.3d 1018, 1022.)

As a result, "[t]he rules which govern tenders are strict and are strictly applied." (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 439.) "'The tenderer must do and offer everything that is necessary on his part to complete the transaction, *and must fairly make known his purpose without ambiguity*, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction.'" (*Gaffney v. Downey Savings & Loan Assn.* (1988) 200 Cal.App.3d 1154, 1165.) The debtor bears "responsibility to make an unambiguous tender of the entire amount due or else suffer the consequence that the tender is of no effect." (*Ibid.*)

14

Consequently, "an offer of performance is of no effect if the person making it is not able to perform." (*Karlsen*, *supra*, 15 Cal.App.3d at p. 118.) Simply put, if the offeror "'is without the money necessary to make the offer good and knows it'" the tender is without legal force or effect. (*Ibid*.) "It would be futile to set aside a foreclosure sale on the technical ground that notice was improper, if the party making the challenge did not first make full tender and thereby establish his ability to purchase the property." (*United States Cold Storage*, *supra*, 165 Cal.App.3d at p. 1225.) "A cause of action 'implicitly integrated' with the irregular sale fails unless the trustor can allege and establish a valid tender." (*Arnolds Management*, *supra*, 158 Cal.App.3d at p. 579.)

Courts have recognized four exceptions to the tender rule:

"First, if the borrower's action attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmation of the debt. [Citations.]

"Second, a tender will not be required when the person who seeks to set aside the trustee's sale has a counter claim or set off against the beneficiary. In such cases, it is deemed that the tender and the counter claim offset one another, and if the offset is equal to or greater than the amount due, a tender is not required. [Citation.]

"Third, a tender may not be required where it would be inequitable to impose such a condition on the party challenging the sale. [Citation.] . . . .

"Fourth, no tender will be required when the trustor is not required to rely on equity to attack the deed because the trustee's deed is void on its face." (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112–113.) With regard to the fourth exception, *Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868 is illustrative. In that case, the original trustee completed trustee's sale after being replaced by new trustee; because the original trustee no longer had power to convey property, the deed of trust was void on its face. (*Id*. at p. 878.)

In his original complaint in which he sought various forms of equitable relief, Brooks did not allege that he had tendered the amount owing on his loan, or that he had even attempted to tender. Nor did Brooks allege, notwithstanding his recent bankruptcy filings, facts showing that he had the ability to tender.

15

Brooks, however, did attempt to allege facts in his original complaint that would put his claims within one of the exceptions to the tender rule. Specifically, he alleged that the assignment of Pinnacle's interest in the mortgage loan to BONY as trustee for a mortgage securitization trust, RAMP 2006RMS1 (the Trust), was invalid. According to the original complaint, under the Trust's pooling and servicing agreement (PSA), all assets were to have been transferred to the Trust by 2005. Because Pinnacle's interest in Brook's loan was not transferred to the Trust until 2009, BONY as the Trust's trustee had no authority to foreclose, because the loan would still belong to Pinnacle. In short, Brooks attempted to put his claim squarely within the exception to the tender rule discussed in *Dimock v. Emerald Properties*, *supra*, 81 Cal.App.4th 868, which he cited to in his original complaint.

The problem with Brooks' allegations and argument is that the PSA is governed by New York law. Although New York Estate Powers and Trusts Law section 7–2.4 states that "every act in contravention of the Trust is void," New York intermediate appellate courts do not apply that code section literally. Instead, those courts treat acts in contravention of a trust as merely voidable because a beneficiary can ratify a trustee's ultra vires act under state law. (See, e.g., *Mooney v. Madden* (1993) 193 A.D.2d 933, 933–934, 597 N.Y.S.2d 775, 776; *Leasing Serv. Corp. v. Vita Italian Rest., Inc.* (1991) 171 A.D.2d 926, 927, 566 N.Y.S.2d 796, 797; *Hine v. Hine* (1907) 118 A.D. 585, 592, 103 N.Y.S. 535, 540; *Matter of Levy* (2010) 69 A.D.3d 630, 632, 893 N.Y.S.2d 142, 144; see also *Bank of America N.A. v. Bassman FBT, LLC* (Ill.App.Ct. 2012) 366 Ill.Dec. 936, 943–945, 981 N.E.2d 1, 8–10 [collecting New York cases finding that a trustee's unauthorized actions are voidable]; *Rajamin*, *supra*, 757 F.3d at p. 90 ["we conclude that as unauthorized acts of a trustee may be ratified by the trust's beneficiaries, such acts are not void but voidable"].)

In rejecting claims similar to those asserted here and in *Glaski*, *supra*, 218 Cal.App.4th 1079, the court in *Calderon v. Bank of America N.A.* (W.D.Tex. Apr. 23, 2013) 941 F.Supp.2d 753, applied New York trust law:

"Even assuming, as Plaintiffs insist, that New York law governs interpretation of the PSA, and assuming that the transfer of Plaintiffs' loan to the Trust violated the terms of the PSA, that after-the-deadline transaction would merely be *voidable* at the election of one or more of the parties—*not void*. Accordingly, Plaintiffs, who were not parties to the PSA, do not have standing to challenge it. [¶] . . . [¶] [E]ven if it is true that the Note was transferred to the Trust in violation of the PSA, that transaction could be ratified by the beneficiaries of the Trust and is merely voidable." (*Calderon v. Bank of Am. N.A.*, *supra*, 941 F.Supp.2d at pp. 766–767, italics added.)

The *Glaski*, *supra*, 218 Cal.App.4th 1079 court, in contrast, cited only two cases in support of its determination that acts by a trustee in contravention of a trust were void. The first, *Wells Fargo Bank, N.A. v. Erobobo* (N.Y.Sup.Ct. 2013) 39 Misc.3d 1220(A), 972 N.Y.S.2d 147 [2013 WL 1831799], was issued by a New York trial court and has subsequently been reversed. (See *Wells Fargo Bank, N.A. v. Erobobo* (N.Y.A.D. 2015) 127 A.D.3d 1176, 9 N.Y.S.3d 312.) Moreover, even before being reversed *Erobobo*'s reasoning and holding was called into doubt. (See *Koufos v. U.S. Bank, N.A.* (D.Mass. 2013) 939 F.Supp.2d 40, 56 fn. 2; *Orellana v. Deutsche Bank Nat. Trust Co.* (D.Mass., Aug. 30, 2013, No. 12-11982-NMG) 2013 WL 5348596, 5, fn. 13; see also *Rajamin*, *supra*, 757 F.3d at p. 90 ["we are not aware of any New York appellate decision that has endorsed [*Erobobo*'s] interpretation of section 7–2.4'"].) The second case relied upon by *Glaski* is an unpublished opinion by the Bankruptcy Court for the Southern District of Texas that relies on *Erobobo* and that is inconsistent with a district court decision from that district issued just days earlier. (Compare *In re Saldivar* (Bankr.S.D.Tex., June 5, 2013, No. 11-10689) 2013 WL 2452699, 4 [transfer was void] with *Sigaran v. U.S. Bank Nat. Ass'n* (S.D.Tex., May 29, 2013, No. H-12-3588) 2013 WL 2368336, 3) [holding that "assignments made after the Trust's closing date are voidable, rather than void"].) *In re Saldivar* has subsequently been found to be "the clear minority [view] on the matter and runs counter to the majority of decisions that have expressly rejected such assignment challenges." (*U.S. Bank Nat. Ass'n v. Salvacion* (Hawaii Ct. App. 2014) 134 Haw. 170, 175, 338 P.3d 1185, 1191.)

In sum, we find the *Glaski*, *supra*, 218 Cal.App.4th 1079 interpretation of New York law unpersuasive. As a result, Brooks' allegations regarding the purported irregularities with the assignment of his loan merely establish that the assignment was voidable, not void. Under California law, a voidable sale is not sufficient to relieve Brooks of his obligations under the tender rule. (*Karlsen*, *supra*, 15 Cal.App.3d at p. 117.)

Because Brooks did not allege that he had either tendered or attempted to tender, the trial court properly sustained the demurrers of DCB and the Karapetians. Because Brooks was aware of the tender rule since at least the dismissal of the First Action, and because Brooks, rather than comply with the tender rule in the Second Action, attempted to plead around it by trying but failing to establish an exception, thereby showing that he could not comply, the trial court did not abuse its discretion in dismissing the claims against DCB and the Karapetians without leave to amend.

To slightly paraphrase the court in *Shuster v. BAC Home Loans Servicing, LP* (2012) 211 Cal.App.4th 505, "[w]e are mindful that foreclosures are a far too frequent occurrence in today's difficult financial times. But the hardship must not become a haven for those who, as here, do not appear to make any good faith effort to resolve the issue but, instead, seek shelter in [meritless legal theories concerning] acts that neither misled nor prejudiced them." (*Id*. at p. 513 [affirming dismissal without leave to amend because borrowers failed to allege tender for claims alleging foreclosure irregularities].)

## DISPOSITION

The judgment is affirmed.  The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, P. J.


CHANEY, J.

19